UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

EBRAHIM SHANEHCHIAN, et al.,  :   NO: 1:07-CV-00828
                         :
      Plaintiffs,       :
                         :   **OPINION AND ORDER**
          v.         :
                         :
MACY'S, INC., et al.,    :
                         :
      Defendants.      :

This matter is before the Court on Plaintiffs' Motion to Certify Class (doc. 65), Defendants' Response in Opposition (doc. 76), Plaintiffs' Reply (doc. 86), Defendants' notice of supplemental authority (doc. 128), Plaintiffs' response thereto (doc. 138), Plaintiffs' notice of supplemental authority (doc. 139) Defendants' surreply (doc. 149) Plaintiffs' response thereto (doc. 157), Defendants' reply (doc. 158), Defendants' notice of supplemental authority (doc. 160) and Plaintiffs' response (doc. 161). The Court held a hearing on Plaintiffs' Motion on January 12, 2011. For the reasons indicated herein, the Court GRANTS Plaintiffs' motion and conditionally certifies the proposed class.

**I. Background**

On August 30, 2005, Defendant Macy's completed a merger with The May Department Stores, acquiring nearly 500 May stores (doc. 27). According to the complaint, after the acquisition, Macy's "made a series of material representations and omissions regarding [Macy's] declining sales growth and its failures in

converting the newly acquired May stores into Macy's brand stores...which caused Macy's common stock to trade at artificially inflated levels" (<u>Id</u>.). Plaintiffs filed this class action, asserting claims under Section 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132 (<u>Id</u>.). Plaintiffs claim that Defendants were fiduciaries of certain ERISA plans and that they breached their fiduciary duties under ERISA by allowing the plans to invest in Macy's stock and by encouraging plan participants to invest in Macy's stock (<u>Id</u>.). Plaintiffs allege that as a result of Defendants' ERISA violations, Plaintiffs and members of the proposed class suffered substantial losses of retirement savings and anticipated retirement income (<u>Id</u>.).

Pursuant to 23(a), 23(b)(1) and 23(b)(3), Plaintiffs propose the following class:

> All participants in or beneficiaries of the Macy's, Inc. Profit Sharing 401(k) Investment Plan and the May Department Stores Company Profit Sharing Plan at any time from February 27, 2005, through and including the present, whose accounts included investments in Macy's stock and were damaged thereby. The Class specifically excludes Defendants, members of the Defendants' immediate families, any officer, director, or partner of any Defendant, any entity in which a Defendant has a controlling interest, and the heirs, successors or assigns of the foregoing.

**II. Discussion**

The district court has broad discretion in deciding whether to certify a class. <u>Gulf Oil Co. v. Bernard</u>, 452 U.S. 89,

2

100 (1981).  A class action may only be certified if the court is satisfied after a "rigorous analysis" that the prerequisites of Rule 23(a) have been met.  <u>General Tel. Co. of Southwest v. Falcon</u>, 457 U.S. 147, 161 (1982).  Maintainability as a class action may be determined by the pleadings, although it may be necessary for the court to probe behind the pleadings to ensure that the prerequisites of Rule 23 have been met.  <u>Id</u>. at 160.

The party seeking to utilize the class action device bears the burden of proof.  <u>Senter v. General Motors Corp.</u>, 532 F.2d 511, 522 (6th Cir. 1976).  In order for a class to be certified, all four prerequisites of Rule 23(a) must be met. <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591 (1997).  Once those prerequisites are met, then the party seeking certification must demonstrate that the action qualifies under at least one of the subcategories of Rule 23(b). <u>Id</u>.   In the case at hand, Plaintiffs claim that they have met the requirements under both Rule 23(b)(1) and (b)(3).

**A.   Requirements of Federal Rule of Civil Procedure 23(a)**

In order to proceed as a class action, the party seeking certification must demonstrate that:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

3

Fed. R. Civ. P. 23(a).

### 1.   Rule 23(a)(1): Numerosity

The first requirement of Rule 23(a) is that the class be so numerous that joinder of all members would be impracticable. Fed. R. Civ. P. 23(a)(1).  The plaintiff need not demonstrate that it would be impossible to join all the class members; rather, he need simply show that joinder in this case would be difficult and inconvenient.  <u>Day v. NLO, Inc.</u>, 144 F.R.D. 330, 333 (S.D. Ohio 1991); <u>see also</u> <u>Boggs v. Divested Atomic Corp.</u>, 141 F.R.D. 58, 63 (S.D. Ohio 1991) (stating "[s]atisfaction of the numerosity requirement does not require that joinder is impossible, but only that plaintiff will suffer a strong litigational hardship or inconvenience if joinder is required.").

Plaintiffs contend that the proposed class consists of thousands of Macy's and Mays employees who held Macy's stock in their Plan accounts during the class period (doc. 65).  Defendants do not challenge Plaintiffs on the question of numerosity, and the Court finds this requirement met as joinder in this matter would be impracticable.

### 2.   Rule 23(a)(2): Commonality

In order to satisfy Rule 23(a)(2), there must be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The commonality requirement is satisfied "as long as the members of the class have allegedly been affected by a *general*

4

policy of the defendant and the general policy is the focus of the litigation." Day, 144 F.R.D. at 333 (quoting Sweet v. General Tire & Rubber Co., 74 F.R.D. 333, 335 (N.D. Ohio 1976)) (emphasis in original).  The commonality test is qualitative, not quantitative. 1 Herbert B. Newberg and Alba Conte, Newberg on Class Actions, § 3.10 at 3-50 (3d ed. 1992).  There need be only a single question of law or fact common to all members of the class.  Id.  "[T]he mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible."  Sterling v. Velsicol Chemical Corp., 855 F.2d 1188, 1197 (6th Cir. 1988).

The common questions of fact and law presented by Plaintiffs include whether Defendants were fiduciaries and whether they breached duties to prudently and loyally manage the Plans' assets, monitor the Plans and provide the Plans' Administrator and other fiduciaries with sufficient information to oversee the Plans and their investments, disclose sufficient information to apprise the Plans' participants of risks associated with the investment in company stock, and act exclusively in the interests of the Plans' participants (doc. 65).  They note that the commonality requirement is typically easily satisfied in ERISA cases.  Defendants do not contest this requirement.

The Court finds that common issues of both law and fact

exist among the putative class members. Specifically, these questions include, but are not limited to, whether Defendants served as fiduciaries and whether they breached their fiduciary duties; whether information disseminated by Defendants was materially misleading; what the proper measure of damages is; what defenses are available to Defendants. Plaintiffs meet the commonality requirement. See Sterling, 855 F.2d 1188, 1197.

### 3. Rule 23(a)(3): Typicality

Rule 23(a)(3) also requires that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A representative's claim need not always involve the same facts or law to be typical, provided there is a common element of fact or law. Senter, 532 F.2d at 525, n.31. The typicality requirement ensures that the representative's interests will be aligned with those of the represented group and that the named plaintiff will also advance the interests of the class members. 1 Newberg, supra, § 3.13, at 3-75. "[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." Id. at 3-76.

Plaintiffs note that they were subjected to the same breaches of fiduciary duty by the same Defendants as the members of the proposed class, thus making them typical of the class (doc.

65).  They further note that each of them was a participant in one of the Plans during the Class Period, had part of his or her individual Plan account invested in Macy's stock during that time, and suffered the same injury as a result of Defendants' breach of duty.  They argue that their claims are sufficiently similar to the claims of the class members they seek to represent because they are brought in a representative capacity on behalf of the Plans so they are inherently typical of the claims of all other class members.

Defendants argue that Plaintiffs fail the typicality requirement because:

- Plaintiffs' misrepresentation claim requires each member of the proposed class to establish that he or she individually relied to his or her detriment on any misrepresentation.
- Plaintiffs and each class member are subject to the individual, transaction-by-transaction defense of ERISA Section 404(c).[1]
- Thousands of purported class members signed releases releasing Defendants from liability for the alleged wrongdoing, and whether each such release is enforceable depends on whether the release was knowing and voluntary, in light of a host of individualized, fact-specific considerations.

_____

[1]  Section 404(c) of ERISA provides certain fiduciaries with an affirmative defense against ERISA claims brought by plan participants or beneficiaries who exercise control over the assets in their individual account pension plans when the loss is attributable to that individual control.  29 U.S.C. § 1104(c); 29 C.F.R. § 2550.404c-1.

- Determining whether Macy's stock was too "risky" for any individual class member turns on an examination of that person's entire investment portfolio and objectives during the relevant period.

In Reply, Plaintiffs contend that Defendants focus on irrelevant factual differences and not, as required, on Plaintiffs' claims (doc. 86). In addition, Plaintiffs note that their allegations and claims concern the same improper conduct, which was directed at the class as a whole, so any individual factual differences are not relevant at this stage. Specifically, Plaintiffs argue that

- Defendants' alleged misrepresentations were made on a plan-wide basis and therefore the detrimental reliance of any individual class member has no bearing on Plaintiffs' claims.
- Section 404(c) provides an individual affirmative defense that does not bar class certification when the claims at issue allege plan-wide misconduct by Defendants and seek recovery on behalf of the Plans as a whole.
- Defendants ignore Sixth Circuit authority holding that the existence of individual releases signed by some class members does not defeat typicality.
- When claims are brought on behalf of the plan as a whole, the typicality analysis does not require an examination of the holdings and investment decisions of each individual class member; variance in individual investment patterns does not undermine typicality; and reliance on modern portfolio theory is misplaced.

The Court notes first that the test for typicality is

8

whether the class representatives' claims are typical, not whether the class representatives themselves are typical.  See, e.g., Stirman v. Exxon Corp., 280 F.3d 554, 562 (5th Cir. 2002).  "If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typciality." Id. Because the Court reads Plaintiffs' complaint to be a claim brought on behalf of the Plans and not, as Defendants repeatedly assert, as one brought individually, the Court is persuaded by Plaintiffs' position in response to Defendants' arguments against typicality. There will be no need to engage in individualized fact-finding regarding the extent to which individual class members detrimentally relied on any misrepresentations made because, at the merits stage, the relevant factual question with respect to misrepresentations will be whether material misrepresentations were made on a Plans-wide basis.  Any individual detrimental reliance in an ERISA case brought on behalf of the Plans is simply not relevant and cannot be used to defeat typicality.  See, e.g., George v. Kraft Foods Global, Inc., 251 F.R.D. 338, 348 (N.D. Ill. 2008)(individual reliance is irrelevant to class certification in an ERISA section 502(a)(2) or (3) case).

Similarly, because the claims are brought on behalf of the Plans, the question is not whether investment in the Plans was too risky for any individual participants.  The relevant question is, instead, whether Defendants breached their fiduciary duties to

the Plans by allowing for investment in company stock at a time when they knew or had reason to know it was an imprudent investment. The answer to that question is in no way implicated by individual participants' investment decisions. The Court is persuaded by and joins the reasoning of the courts that have found that variations in individual investment patterns do not defeat typicality and that, when an action is brought on behalf of the Plans, as it is here, the modern portfolio theory is no defense to the allegations of breach of the fiduciary duty of prudent management. See, e.g., DiFelice v. U.S. Airways, Inc., 497 F.3d 410, 423-34 (4th Cir. 2007)("[A] fiduciary must initially determine, and continue to monitor, the prudence of each investment option available to plan participants...[A] fiduciary cannot free himself from his duty to act as a prudent man simply by arguing that other funds, which individuals may or may not elect to combine with a company stock fund, could theoretically, in combination, create a prudent portfolio"); Brieger v. Tellabs, Inc., 245 F.R.D. 345, 350 (N.D. Ill. 2007)(rejecting defendants' argument that claims of class representatives were atypical because each plan participant's claim depended on individual investment decisions and finding that, because 502(a)(2) actions "focus on the injury to the plan from the fiduciary's alleged breach, rather than on injury to the individual participants...variance in individual Plan participants' investment patterns does not undermine typicality").

10

With respect to the individualized defense set forth in section 404(c), Defendants' assertions likewise fail to defeat typicality. As noted by the court in <u>Cates v. Cooper Tire and Rubber Co.</u>, 253 F.R.D. 422, 430 (N.D. Ohio 2008), "potential affirmative defenses against some class members do not bar class certification, as plaintiffs' claims need not be factually indistinguishable to be typical." It is not as if Defendants have alleged that Plaintiffs as individuals will be subject to 404(c) or other unique defenses that other members of the class would not be. <u>See</u>, <u>e.g.</u>, <u>Bentley v. Honeywell Intern, Inc.</u>, 223 F.R.D. 471, 485 (S.D. Ohio 2004)(noting same with respect to adequacy). As they do for much of their case, Defendants rely here on <u>Langbecker v. Elec. Data Sys. Corp.</u>, 476 F.3d 299 (5th Cir. 2007). Like the <u>Tellabs</u> court, this Court does not read <u>Langbecker</u> to definitively hold that potential 404(c) defenses should act as a <u>per</u> <u>se</u> bar to class certification. <u>See</u> <u>Tellabs</u>, 245 F.R.D. at 352-53. As the <u>Tellabs</u> court noted, in <u>Langbecker</u>,

> the Fifth Circuit faulted the lower court's reliance on an 'overarching derivative suit construct' effectively to eliminate the section 404(c) defense in suits brought under section 502(a)(2)...Although the Fifth Circuit suggested that the availability of section 404(c) defenses in these suits should have some bearing on class certification, it was more concerned that elimination of the defense could lead to ultimate recovery 'on behalf of' ERISA plans that would exceed the aggregate amount individual participants could recover...<u>Langbecker</u> is vague as to how the possibility of section 404(c) defenses should influence courts' class certification analyses, saying only that the 'harmonization' of the two provisions "bears on the susceptibility of [suits under section 502(a)(2)] to class action treatment, because §

404(c) individualizes the consequences of fiduciary duty violations.' The Court does not find in <u>Langbecker</u> more specific guidance than this as to section 404(c)'s bearing on typicality. It does, however, note that the <u>Langbecker</u> court ultimately upheld the lower court's finding that the plaintiffs' claims were typical of those of the putative class. <u>Tellabs</u>, 245 F.R.D. at 353 (internal citations omitted).

As did the <u>Tellabs</u> court, the Court concludes that the potential applicability of 404(c) to some members of the class is simply not sufficient to defeat the typicality requirement.

Similarly, Defendants' argument that some number of potential class members signed releases precluding their participation in this suit is an argument that is more properly addressed at a later stage in these proceedings, either through the creation of a subclass if needed or on the merits.  This factual difference-that some putative members may have signed releases and others may not have-"is not enough to justify rejection of class certification." <u>Bittinger v. Tecumseh Products Co.</u>, 123 F.3d 877 (6th Cir. 1997).

The threshold for satisfying the typicality prong is a low one. <u>Weisfeld v. Sun Chem. Corp.</u>, 210 F.R.D. 136, 140 (D.N.J. 2002)(quoting <u>In re Catfish Antitrust Litig.</u>, 826 F. Supp. 1019, 1035 (N.D. Miss. 1993) ("[i]n instances wherein it is alleged that the defendants engaged in a common scheme relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical of the absent members.")). Plaintiffs have alleged that Defendants' conduct was directed both

12

at them and at the class they seek to represent, and their claims are brought on behalf of the Plans for alleged breaches of fiduciary duties to the Plans. Consequently, the individual factual differences Defendants assert do not defeat typicality. The Court concludes that Plaintiffs have met the typicality prerequisite of Rule 23(a)(3). This leads to the final Rule 23(a) prerequisite of class certification, adequacy.

### 4.   Rule 23(a)(4): Adequacy

Rule 23(a)(4) requires that the representative parties fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). There are two criteria for determining the adequacy of representation: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." Senter, 532 F.2d at 525; Cross v. Nat'l Trust Life Ins. Co., 553 F.2d 1026, 1031 (6th Cir. 1977) (stating Rule 23(a)(4) tests "the experience and ability of counsel for plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent.").[2]

---

[2]   The Court notes that Defendants do not challenge Plaintiffs' counsels' expertise in complex class actions, and the Court finds that the record easily supports a conclusion that Plaintiffs' counsel, Harwood Feffer and Milberg, as well as Katz, Greenberger & Norton, are highly qualified to represent Plaintiffs in this matter.

13

Defendants assert that Plaintiffs' attempt at class certification fails under the adequacy prerequisite because, they contend, Plaintiffs' counsel will be forced to take positions that will advantage some class members over others, and intra-class conflicts preclude certification. Specifically, Defendants' expert, Dr. Turki, posits that each individual putative class member would be affected differently by the choice of different breach dates and that each individual would have an "optimal breach date," which would be the date that would provide the individual with the greatest financial return. Because class counsel, according to Defendants, will be forced to choose a breach date, that choice necessarily would advantage some over others, which creates insurmountable intra-class conflicts.

The Court, however, finds itself aligned with the position of Plaintiffs' expert, Mr. Solomon.[3]  Defendants' concern that

_____

[3] The Court notes that Defendants objected to the Court's consideration of Mr. Solomon's report because it was filed with Plaintiffs' reply and not with Plaintiffs' motion for class certification (doc. 149). The Court granted Defendants' request to file their surreply in further opposition to Plaintiffs' motion, in which Defendants made this objection, but the Court finds Defendants' position unpersuasive. Plaintiffs filed Mr. Solomon's report in response to Defendants filing Dr. Turki's report, and it is a legitimate use of a reply to rebut the positions of the responding party. See Local R. Civ. P. 7.2(d); Brantley v. Cinergy Corp., 2006 U.S. Dist. LEXIS 8377, 2006 WL 314494 (S.D. Ohio Feb. 9, 2006). In addition, Defendants responded to Mr. Solomon's report in their surreply, so the Court cannot see how Defendants were prejudiced by the inclusion of the report in Plaintiffs' reply brief. However, even if the Court had refused to consider Mr. Solomon's report, the outcome of this case would not change as the Court in no way relied upon the

individualized "optimal breach dates" create intra-class conflicts is misplaced and, if heeded, would effectively eliminate all ERISA fiduciary breach of duty class actions.  While it may be true that each individual participant in the Plans would likely be affected differently by varying the breach date, this is a red herring.  As the Court noted at the hearing, when a line is drawn, some people suffer.  That is simply the nature of the class action beast and is not a compelling reason to find intra-class conflicts precluding certification.  Defendants repeatedly argue that the conflict arises because Plaintiffs' counsel will pick a date to advocate for, which date will necessarily advantage some class members and disadvantage others.  But even if that's true, the Court does not see how that creates a preclusive intra-class conflict.  Plaintiffs' counsel is perfectly free to advocate whatever is best for the Plans, but the Court will make its determination of if and when Defendants breached their fiduciary duties to the Plans based on the evidence in the record and the controlling law, irrespective of the "preferred" or "optimal" breach dates for any given individual.

As Mr. Solomon repeatedly noted in his deposition, the

---

report to reach the conclusion that Dr. Turki's claims of preclusive intra-class conflicts are unfounded.  Instead, the Court relied on the present facts and the law to reach that conclusion.  See, e.g., DiFelice v. U.S. Airways, Inc., 235 F.R.D. 70, 79 (E.D. Va. 2006)(noting that "as this lawsuit is brought on behalf of the Plan, individual participants' 'optimal imprudence dates' are irrelevant" and rejecting Dr. Turki's assertions of intra-class conflicts).

15

choice of a breach date will ultimately be up to the Court, a point that seems lost on Defendants.  If a breach occurred and when it occurred are factual and legal questions, not, contrary to Defendants' concerns, issues to be selectively determined by Plaintiffs' counsel.  Instead, they are questions to be answered by the Court based on the evidence presented at a later stage in the proceedings.  Assuming the Court finds that a breach occurred, the answer to the question of when it occurred will provide the relevant breach date.  The Court sees no intra-class conflict here.[4]

In addition, Defendants argue (1) that Plaintiff Snyder is not an adequate representative because he benefitted from his investments in Macy's stock during the class period and was thus not damaged and because he cannot demonstrate a basic understanding of the facts surrounding his claims; (2) that Plaintiff Johnson is not an adequate class representative because she is related to class counsel and class counsel solicited her to join this suit; and (3) that Plaintiff Stengel is an inadequate class representative because he signed a release that subjects him to a unique defense inapplicable to most of the class.

---

[4] To the extent Defendants' argument is more appropriately cast as an argument relating to allocation of damages, as Plaintiffs have cast it (doc. 86), the Court finds it both premature and unpersuasive.  Any damages resulting from this suit inure to the benefit of the Plans and would then be allocated among the Plans' participants using an appropriate formula.  In any event, the Court is fully capable of structuring the damages allocation process in such a way as to account for individual differences among the class members.

The Court is unmoved by these arguments.  First, with respect to Plaintiff Snyder, the Court is persuaded by the opinion of Plaintiffs' expert Solomon that, using an alternative investment approach, Snyder suffered a loss of between $1,214 and $79,735.  However, if the facts point to a breach occurring at a point in time that would mean that Plaintiff Snyder's account did not suffer harm, the Court can, if necessary, modify the class certification order accordingly.[5]  Further, Defendants have offered no persuasive evidence that Plaintiff Snyder is not an adequate representative based on his lack of familiarity with and inadequate participation in the case and, instead, have taken deposition statements out of context to support their assertion.  The full record reflects that Plaintiff Snyder has read the complaint, produced timely discovery, participated in a deposition conducted by Defendants' counsel, and demonstrated a fundamental understanding of the issues involved in the case, including the stock-inflation theory (docs. 77, 85).  Further, he has met with and consulted with class counsel and other Plaintiffs on several occasions (doc. 85).  Defendants' attempt to characterize Plaintiff Snyder as inadequate based on a lack of understanding of the issues involved in this matter is not well taken.  Plaintiff Snyder need not be perfect, nor need he be as

---

[5]  At the hearing, Defendants argued that Snyder's alleged lack of financial loss means that he lacks standing and pointed the Court to Taylor v. KeyCorp, 2010 WL 3702423 (N.D. Ohio August 12, 2010) for support.  Because the Court finds that Snyder did likely suffer losses, this argument fails.

17

fluent in the intricacies of the case as his attorneys; he must merely be adequate, and the Court finds he is. See, e.g., In re Foundry Resins Antitrust Litig., 242 F.R.D. 393, 407 (S.D. Ohio 2007); Ross v. Abercrombie & Fitch Co., 257 F.R.D. 435, 451 (S.D. Ohio 2009).

With respect to Plaintiff Johnson, the Court finds Defendants' claims of inadequacy based on a familial relationship with class counsel to be overblown. Plaintiff Johnson is the cousin-in-law of Alfred Yates, one of the non-lead attorneys in this matter (doc. 85). Defendants have produced no credible evidence that Yates lured Johnson into participating in this lawsuit to act merely as a puppet or that the cousin-in-law relationship will compromise Johnson's ability to vigorously prosecute this matter on behalf of the class. There is no per se bar on familial connections between class representatives and class counsel. Defendants turn to Turoff v. May Co., 531 F.2d 1357 (6th Cir. 1976) for support, but Turoff neither sets forth a per se bar nor is on point with this case. In Turoff, the court found that three of the four named plaintiffs were attorneys with the class counsel's firm and the fourth was the wife of one of them. 531 F.2d at 1360. Because "the roles of class representative and class attorney cannot be played by the same person," the court found the plaintiffs to lack standing as class representatives. This case, of course, presents no such conflict. Indeed, as Plaintiffs note, class representatives have

18

been approved even with relationships far closer than cousin-in-law. See, e.g., In re Cardizem CD Antitrust Litig., 200 F.R.D. 326, 337-38 (E.D. Mich. 2001)(class representative's son was associate attorney with class counsel); Lewis v. Goldsmith, 95 F.R.D. 15, 20-21 (D.N.J. 1982)(named plaintiff represented by uncle).

Finally, regarding Plaintiff Stengel's release, as discussed above, the existence of a release that may affect some but not all class members does not preclude class certification. Bittinger, 123 F.3d 877. Further, Stengel's release applies to only certain claims, not all claims, against Macy's (doc. 77). Importantly, the release contains an ERISA carve-out, stating that the release has no effect on any rights "accrued and vested prior to the employment termination date under the Company's ERISA benefit plans [or] brought pursuant to the terms of an ERISA plan" (Id.). Plaintiff Stengel's release does not make him an inadequate class representative. See, e.g., Brieger v. Tellabs, Inc., 473 F.Supp.2d 878, 885 (N.D. Ill. 2007).

The Court finds that the named Plaintiffs have common interests with the unnamed putative class members and that they have demonstrated that they will "vigorously prosecute the interests of the class through qualified counsel." Senter, 532 F.2d at 525. Further, the Court finds that potential variations in individual amounts recovered as a result of the ultimate determination of a breach date do not create disabling intra-class conflicts, as that

19

determination will be made by the Court based on the facts and the law, and the relevant ultimate determination will be the extent to which the Plans were damaged, not any given individuals. Consequently, the Court finds the requirements of adequacy met here.

This does not end the Court's analysis, however. Once it is determined that the prerequisites to Rule 23(a) have been met, the Court must determine if the case is of a type which can be certified under Rule 23(b). Plaintiffs contend their class can be certified under either Rule 23(b)(1) or (3).

**B. The Requirements of Federal Rule of Civil Procedure 23(b)(1).**

District courts may certify a class under Rule 23(b)(1) if the prosecution of separate actions by or against individual members of the class would create a risk of (A) inconsistent or varying adjudication with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. Fed. R. Civ. P. 23(b)(1). Subsection (A), therefore, considers possible prejudice to defendants, while subsection (B) looks to possible prejudice to the putative class members. In re Ikon Office Solutions, Inc., 191 F.R.D. 457, 466 (E.D. Pa. 2000).

20

The Court notes that, at first blush, there could appear to be some inconsistencies in certifying a class when the action is brought on behalf of the Plans.  That is, if the relief sought is Plan-wide relief, why should a class action be the preferred vehicle when, presumably, a single plaintiff could secure that relief?  To be clear, ERISA does permit a single plaintiff to sue for plan-wide relief for breaches of fiduciary duty.  See 29 U.S.C. § 1132(a)(2). Unlike an individual suit to recover ERISA benefits brought pursuant to 29 U.S.C. § 1132(a)(1)(A), an action to enforce fiduciary duties is "brought in a representative capacity on behalf of the plan as a whole." Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 142 n.9 (1985).  Because of the representative nature of this type of suit, the outcome of the suit would affect all plan participants, even if indirectly, and a class action affords protections to the plan participants that would not be present with individual suits.  See, e.g., Specialty Cabinets & Fixtures, Inc. v. American Equitable Lief Ins. Co., 140 F.R.D. 474 (S.D. Ga. 1991)(certifying ERISA class under 23(b)(1) because "an individual ERISA action to remedy breaches of fiduciary duty would 'substantially impair or impeded' the ability of absent beneficiaries and participants to protect their [vital] interests" and noting that if absent individuals are not joined, they would have no voice in deciding the appropriate relief to the fiduciary breaches).  Consequently, most ERISA breach-of-fiduciary-duty

actions are brought as class actions.

In this matter, class certification is proper under both subsections (A) and (B) of 23(b)(1). As to subsection (A), because the fiduciary duties at issue in this case are owed to the Plans, thousands of separate individual actions could result in differing standards of duty and, thus, differing standards of conduct with respect to Defendants and the Plans, which would be an untenable outcome.[6] If liability is found in one court but not in another, Defendants would be left in limbo, having been vindicated with respect to their duties to the Plans in one court but subject to judgment that would vitiate that vindication in another, thus making compliance impossible. See, e.g., Thomas v. SmithKline Beecham Corp., 201 F.R.D. 386, 397 (E.D. Pa. 2001); In re CMS Energy ERISA Litigation, 225 F.R.D. 539, 543 (E.D. Mich. 2004)(rejecting defendants' argument that class certification was inappropriate because plaintiffs' recovery would be automatic regardless of their status as class members and finding certification under 23(b)(1) appropriate because "failure to certify could risk inconsistent

---

[6] The Court notes that the possible precedential effect of individual actions does not, standing alone, justify certification under Rule 23(b)(1), nor is the fact that some plaintiffs may be successful in their litigation against Defendants while others may not. See, e.g., In re Benedectin Prods. Liability Litig., 749 F.2d 300, 305 (6th Cir. 1984); Bacon v. Honda of Am. Mfg., Inc., 205 F.R.D. 466, 483 (S.D. Ohio 2001). Instead, the Court looks to whether conflicting individual adjudications would result in "different and incompatible affirmative relief". Alexander Grant & Co., v. McAlister, 116 F.R.D. 583, 589 (S.D. Ohio 1987).

rulings concerning fiduciary status of the defendants"). Because incompatible affirmative relief to the Plans could result from the failure to certify class, certification under subsection (A) is appropriate.

Subsection (B) is even more on point. Because Plaintiffs seek relief on behalf of the Plans, as noted above, prosecution of separate actions by individual participants would create a risk of adjudications that would be dispositive of the interests of other participants not parties to those adjudications. Plaintiffs correctly observe that the Advisory Committee Notes state that Rule 23(b)(1)(B) is appropriate for an "action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust." Fed. R. Civ. P. 23(b)(1)(B), Advisory Committee Note (1966 Amendment). This case falls squarely within the meaning articulated by the Advisory Committee as Plaintiffs allege breaches of fiduciary duties affecting the Plans and the thousands of participants in the Plans. The Court is in agreement with the many courts that, because of the nature of ERISA fiduciary actions, have found classes certifiable under similar theories and circumstances. See, e.g., DiFelice, 235 F.R.D. at 80 ("given the derivative nature of suits brought pursuant to § 502(a)(2) on behalf of the Plan, 'ERISA litigation of this nature

23

presents a paradigmatic example of a (b)(1) class'"); <u>Shirk v. Fifth Third Bancorp</u>, 71 Fed. R. Serv. 3d 1199 (S.D. Ohio Sept. 30, 2008); <u>Rankin v. Rots</u>, 220 F.R.D. 511, 522 (E.D. Mich. 2004); <u>Koch v. Dwyer</u>, 2001 U.S. Dist. LEXIS 4085, 2001 WL 289972, at *5 (S.D. Ny. March 23, 2001); <u>SmithKline</u>, 201 F.R.D. at 397; <u>Ikon</u>, 191 F.R.D. at 466; <u>Bunnion v. Consol. Rail Corp.</u>, 1998 U.S. Dist. LEXIS 7727, 1998 WL 372644, at *13 (E.D. Pa. May 14, 1998).  Therefore, the Court finds certification under 23(b)(1) proper.

Having thus found certification of Plaintiffs' class appropriate under both subsections of Rule 23(b)(1), the Court need not reach the question of whether the class qualifies under Plaintiffs' alternatively pleaded theory that they qualify under Rule 23(b)(3).

## III.  Conclusion

Having heard the positions of the parties at the January 12, 2011 hearing, and having considered their respective arguments expressed in their briefing, the Court finds that this matter should be conditionally certified as a class action.  Plaintiffs have met the requirements for class certification under Federal Rules of Civil Procedure 23(a) and (b)(1).

Accordingly, the Court hereby GRANTS Plaintiffs' Motion for Class Certification (doc. 65), conditionally CERTIFIES this case as a class action pursuant to Fed. R. Civ. P. Rules 23(a) and (b)(1), and DEFINES the class according to Plaintiffs' definition

as stated in Section I herein.  The Court further DESIGNATES Plaintiffs Anita Johnson, Donald Snyder and Joseph Stengel to serve as class representatives, and DESIGNATES the law firms of Harwood Feffer and Milberg, and Katz, Greenberger & Norton to serve as co-lead class counsel.

SO ORDERED.

Dated: March 10, 2011          /s/ S. Arthur Spiegel
                               S. Arthur Spiegel
                               United States Senior District Judge