IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

EBRAHIM SHANEHCHIAN, Individually
And on Behalf of All Others Similarly
Situated,

Plaintiff,

v.

MACY'S, INC. *et al.*,

Defendants.

Case No. 1:07-cv-00828-SAS-SKB

Judge S. Arthur Spiegel
Magistrate Judge Stephanie K. Bowman

**LEAD PLAINTIFFS' MOTION FOR: (1) FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND (2) PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS
AND LEAD COUNSEL'S MOTION FOR: (1) AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES AND (2) CASE CONTRIBUTION AWARDS**

Pursuant to Fed. R. Civ. P. 23, Lead Plaintiffs Anita Johnson, Joseph Stengel, and Donald

Snyder (collectively, "Class Representatives") respectfully move for final approval of the

Settlement of this Action and approval of the Plan of Allocation of the Settlement proceeds.[1]

Contemporaneously, pursuant to Fed. R. Civ. P. 23(h), the law firms of Milberg LLP, Harwood

Feffer LLP, and Katz, Greenberger & Norton LLP ("Co-Lead Counsel") respectfully move for

an order granting an award of attorneys' fees, expense reimbursement and case contribution

awards.

---

[1]     Unless otherwise defined herein, capitalized terms shall have the same meanings as set
forth in the Stipulation and Agreement of Settlement dated November 14, 2012 (the
"Stipulation") (dkt. # 216).

The parties in this litigation, following extensive negotiation, reached a settlement providing, *inter alia*, for the payment of $8.5 million to the Class (hereinafter described (the "Settlement") as embodied in the Stipulation. In connection therewith, Lead Plaintiffs and Co-Lead Counsel move for an order:

    a.  approving the Settlement;

    b.  certifying a class under Federal Rule of Civil Procedure 23(b)(1) consisting of all participants in or beneficiaries of the Macy's, Inc. Profit Sharing 401(k) Investment Plan and/or the May Department Stores Company Profit Sharing Plan at any time from February 27, 2005 through and including July 24, 2012, whose Plan account included an investment in the Macy's Company Stock Fund at any time during that period. The Class specifically excludes the Individual Defendants, their Immediate Family, and all current officers and directors of Macy's;

    c.  approving the proposed plan of allocation;

    d.  approving the application for attorneys' fees and expenses pursuant to Fed. R. Civ. P. 23(h); and

    e.  approving case contribution awards to the Class Representatives and plaintiff Shanehchian.

The proposed settlement confers a substantial benefit on the class as detailed in the accompanying Joint Declaration of Arvind Khurana and Robert I. Harwood and Memorandum of Law, and merits the Court's approval.

WHEREFORE, for the reasons set forth above, this Court should enter the [PROPOSED] ORDER AND FINAL JUDGMENT, filed with Court on November 14, 2012 (Dkt. #216-2).

Dated: February 28, 2012

                                */s/ Stephen E. Imm*
                                Stephen E. Imm
                                KATZ, GREENBERGER & NORTON LLP
                                105 East Fourth Street, 4th Floor
                                Cincinnati, Ohio 45202
                                Telephone: (513) 721-5151

Robert I. Harwood
Daniella Quitt
Samuel K. Rosen
HARWOOD FEFFER LLP
488 Madison Avenue, 8th Floor
New York, New York  10022
Telephone:  (212) 935-7400

Lori G. Feldman
Arvind Khurana
Paul Andrejkovics
MILBERG LLP
One Penn Plaza
New York, New York  10119-0165
Telephone:  (212) 594-5300

*Plaintiffs' Co-Lead Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served on the following counsel of record on February 28, 2013 by electronic mail through the Court's CM/ECF system:

Jeremy P. Blumenfeld
Brian T. Ortelere
Morgan Lewis Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921

J. Todd Kennard
Jones Day
PO Box 165017
Columbus, OH 43216-5017

*/s/ Stephen E. Imm*
Stephen E. Imm

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| EBRAHIM SHANEHCHIAN, ANITA JOHNSON, DONALD SNYDER and JOSEPH STENGEL,<br><br>Plaintiffs,<br><br>v.<br><br>MACY'S, INC., et al.,<br><br>Defendants. | Case No. 1:07-cv-00828 (SAS) (SKB)<br><br>Judge S. Arthur Spiegel<br><br>Magistrate Judge Stephanie K. Bowman |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR: (1) FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND (2) PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS AND CO-LEAD COUNSEL'S MOTION FOR: (1)  AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES AND (2) CASE CONTRIBUTION AWARDS**

# Table of Contents

**Page**

PRELIMINARY STATEMENT ...................................................................................1

SUMMARY OF ARGUMENT ....................................................................................1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ..................................4

ARGUMENT ...............................................................................................................5

    I.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
ADEQUATE ...............................................................................................5

        A.    Lead Plaintiffs' Likelihood of Ultimate Success on the Merits
Balanced Against the Amount of Settlement Support Final
Approval .........................................................................................6

        B.    The Complexity, Expense and Likely Duration of the Litigation ..............8

        C.    Lead Plaintiffs Have Engaged in Sufficient Discovery and Have
Conducted a Thorough Investigation to Identify the Strengths and
Weaknesses of Their Case and the Propriety of Settlement ......................9

        D.    The Judgment of Experienced Co-Lead Counsel Supports
Settlement ......................................................................................11

        E.    The Nature of the Negotiations Demonstrates a Fair, Non-
Collusive Process ...........................................................................11

        F.    Lack of Objections Raised by the Class Members ................................12

        G.    The Settlement is Consistent with the Public Interest ............................12

FINAL CLASS CERTIFICATION ..............................................................................13

    II.    NOTICE TO PROSPECTIVE CLASS MEMBERS WAS ADEQUATE ...........14

    III.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND
ADEQUATE ...............................................................................................15

    IV.    THE COURT SHOULD AWARD ATTORNEYS' FEES AND
EXPENSES .................................................................................................16

        A.    A Reasonable Percentage of the Fund Created Is an Appropriate
Method of Awarding Attorneys' Fees in Common Fund Cases...............17

        B.    A Fee of 30% of the Fund Is Reasonable in This Case ...........................18

|  |  | 1. | The Settlement Provides a Valuable Benefit to the Class | 18 |
|  |  | 2. | The Settlement Provides a Benefit to Society | 19 |
|  |  | 3. | Services Rendered Were on a Contingent Fee Basis | 20 |
|  |  | 4. | The Value of the Services on an Hourly Basis | 21 |
|  |  | 5. | Complexity of the Litigation | 21 |
|  |  | 6. | Professional Skill of Counsel | 23 |
| V. | THE REQUESTED FEE AWARD IS REASONABLE WHEN COMPARED TO AWARDS IN SIMILAR CASES | | | 25 |
| VI. | A LODESTAR CROSS-CHECK JUSTIFIES THE FEE AWARD | | | 27 |
| VII. | PLAINTIFFS' COUNSEL'S OUT-OF-POCKET EXPENSES SHOULD BE REIMBURSED | | | 29 |
| VIII. | THE PROPOSED CASE CONTRIBUTION AWARDS ARE REASONABLE | | | 31 |
| CONCLUSION | | | | 33 |

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Adams v. Standard Knitting Mills, Inc.*,
    No. 8052, 1978 U.S. Dist. LEXIS 20317 (E.D. Tenn. Jan. 6, 1978) ...................................26

*Akers v. Palmer*,
    71 F.3d 226 (6th Cir. 1995) ...............................................................................................21

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
    MDL No. 1500, 2006 U.S. Dist. LEXIS 17588 (S.D.N.Y. Apr. 6, 2006) ...........................16

*In re Aquila ERISA Litig.*,
    No. 04-865 (W.D. Mo. Nov. 29, 2007) .............................................................................26

*In re Bankamerica Corp. Sec. Litig.*,
    228 F. Supp. 2d 1061 (E.D. Mo. 2002), *aff'd*, 350 F. 3d 747 (8th Cir. 2003) .....................28

*Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    640 F. Supp 697 (S.D. Ohio 1986) ...................................................................................22

*Blum v. Stenson*,
    465 U.S. (1984) .................................................................................................................28

*Bower v. MetLife, Inc.*,
    No. 09-351, 2012 U.S. Dist. LEXIS 149117 (S.D. Ohio Oct. 17, 2012) ...........................14

*Bowling v. Pfizer, Inc.*,
    922 F. Supp. 1261 (S.D. Ohio) ..........................................................................18, 23, 27

*Bradburn Parent Teacher Store, Inc. v. 3M*,
    513 F. Supp. 2d 322 (E.D. Pa. 2007) ................................................................................27

*Brieger v. Tellabs, Inc.*,
    659 F. Supp. 2d 967 (N.D. Ill. 2009) ..................................................................................7

*In re Broadwing, Inc. ERISA Litig.*,
    252 F.R.D. 369 (S.D. Ohio 2006) .......................................................................9, 18, 22, 32

*Brotherton v. Cleveland*,
    141 F. Supp. 2d 894 (S.D. Ohio 2001) ........................................................................ *passim*

*Brotherton v. Cleveland*,
    141 F. Supp. 2d 907 (S.D. Ohio 2001) ...........................................................................4, 25

*In re Cardinal Health Inc. Sec. Litigs.*,
    528 F. Supp. 2d 752 (S.D. Ohio 2007) ...................................................................20

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003) ..................................................................12, 13

*In re Cincinnati Gas & Elec. Co. Sec. Litig.*,
    643 F. Supp. 148 (S.D. Ohio 1986) ............................................................. *passim*

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) .........................................................................16

*In re CMS Energy ERISA Litig.*,
    No. 02-72834, 2006 U.S. Dist. LEXIS 55836 (E.D. Mich. June 27, 2006) ...........32

*Cook v. Niedert*,
    142 F.3d 1004 (7th Cir. 1998) .........................................................................32

*Coppess v. Healthways, Inc.*,
    No. 10-109 (M.D. Tenn. Apr. 25, 2011) ...........................................................26

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
    248 F.R.D. 483 (E.D. Mich. 2008) .....................................................................6

*In re Elec. Data Sys. Corp. ERISA Litig.*,
    No. 03-126 (E.D. Tex. Aug. 6, 2008) ...............................................................26

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
    228 F.R.D. 541 (S.D. Tex. 2005) .....................................................................13

*Enter. Energy Corp. v. Columbia Gas Transmission Corp.*,
    137 F.R.D. 240 (S.D. Ohio 1991) ..............................................................5, 30

*In re Equity Funding Corp. of Am. Sec. Litig.*,
    438 F. Supp. 1303 (C.D. Cal. 1977) ................................................................25

*Eslava v. Gulf Tel. Co.*,
    No. 04-297 (D. Ala. Nov. 16, 2007) ................................................................26

*Feerer v. Amoco Prod. Co.*,
    No. 95-0012, 1998 U.S. Dist. LEXIS 22248 (D.N.M. May 28, 1998) .................32

*In re Ferro Corp. ERISA Litig.*,
    No. 05-1594, 2007 U.S. Dist. LEXIS 71929 (N.D. Ohio Sept. 27, 2007) ........25, 32

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005) ...............................................................32, 33

*Gaskill v. Gordon,*
  160 F.3d 361 (7th Cir. 1998) ......................................................................26

*In re Global Crossing Sec. & ERISA Litig.,*
  225 F.R.D. 436 (S.D.N.Y. 2004)................................................................15

*Graden v. Conexant Sys., Inc.,*
  No. 05-695 (D.N.J. Sept. 11, 2009) ...........................................................26

*Hadix v. Johnson,*
  322 F.3d 895 (6th Cir. 2003) ......................................................................31

*Hall v. AT&T Mobility LLC,*
  No. 07-5325, 2010 U.S. Dist. LEXIS 109355 (D.N.J. Oct. 13, 2010) .....................27

*In re HealthSouth Corp. ERISA Litig.,*
  No. 03-1700, 2006 U.S. Dist. LEXIS 50196 (N.D. Ala. June 28, 2006)................................32

*Horton v. Merrill Lynch, Pierce, Fenner & Smith,*
  855 F. Supp. 825 (E.D.N.C. 1994).............................................................10

*Howes v. Atkins,*
  668 F. Supp. 1021 (E.D. Ky. 1987) ............................................................26

*In re IKON Office Solutions, Inc. Sec. Litig.,*
  209 F.R.D. 94 (E.D. Pa. 2002).....................................................................13

*In re Ikon Office Solutions, Inc. v. Stuart,*
  194 F.R.D. 166 (E.D. Pa. 2000)...................................................................27

*Ingram v. Coca-Cola Co.,*
  200 F.R.D. 685 (N.D. Ga. 2001)..................................................................31

*Int'l Union, UAW v. Gen. Motors Corp.,*
  497 F.3d 615 (6th Cir. 2007) ........................................................................5

*In re Integra Realty Res., Inc.,*
  262 F.3d 1089 (10th Cir. 2001) ..................................................................15

*In re Jiffy Lube Sec. Litig.*
  927 F.2d 155 (4th Cir. 1991) ...................................................................9, 10

*Kirchoff v. Flynn,*
  786 F.2d 320 (7th Cir. 1986) ......................................................................26

*Kogan v. AIMCO Fox Chase, L.P.,*
  193 F.R.D. 496 (E.D. Mich. 2000) ..............................................................25

*In re Marsh ERISA Litig.*,
    No. 04-8157 (S.D.N.Y. Jan. 29, 2010) ...................................................26

*In re MBNA Corp. ERISA Litig.*,
    No. 05-429 (D. Del. Mar. 27, 2009) ......................................................26

*In re Merck & Co. Vytorin ERISA Litig.*,
    No. No. 08-285, 2010 WL 547613 (D.N.J. Feb. 9, 2010) ......................26

*Milliron v. T-Mobile USA, Inc.*,
    No. 08-4149, 2009 U.S. Dist. LEXIS 101201 (D.N.J. Sept. 10, 2009), *aff'd*, 423 F.
    App'x 131 (3d Cir. 2011) ......................................................................26

*Missouri v. Jenkins*,
    491 U.S. 274 (1989) ..............................................................................29

*Moore v. Comcast Corp.*,
    No. 08-773 (E.D. Pa. Jan. 24, 2011) .....................................................26

*Morrison v. Moneygram Intl., Inc.*,
    No. 08-1121 (D. Minn. May 20, 2011) ..................................................26

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ..............................................................................14

*In re Nationwide Fin. Servs. Litig.*,
    No. 08-00249, 2009 U.S. Dist. LEXIS 126962 (S.D. Ohio Aug. 18, 2009)...........................18

*In re Nortel Networks Corp. "ERISA" Litig.*,
    No. 03-md-01537, 2009 U.S. Dist. LEXIS 130143 (M.D. Tenn. Sept. 2, 2009) ...................21

*Northcross v. Bd. of Educ.*,
    611 F.2d 624 (6th Cir. 1979) .................................................................30

*In re Oracle Sec. Litig.*,
    No. 90-0931, 1994 U.S. Dist. LEXIS 21593 (N.D. Cal. June 16, 1994)...............................16

*In re Packaged Ice Antitrust Litig.*,
    No. 08-MDL-01952, 2011 U.S. Dist. LEXIS 150427 (E.D. Mich. Dec. 13, 2011) ................14

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997)...............................16

*Pfeil v. State St. Bank & Trust Co.*,
    671 F.3d 585 (6th Cir. 2012), *cert. denied*, 133 S. Ct. 758 (2012)....................6, 7

*In re Polaroid ERISA Litig.*,
    No. 03-8335, 2007 U.S. Dist. LEXIS 51983 (S.D.N.Y. July 19, 2007) .................................32

*In re Radioshack Corp. "ERISA" Litig.*,
  No. 08-1875 (N.D. Tex. Feb. 8, 2011)...........................................................26

*Ramey v. Cincinnati Enquirer, Inc.*,
  508 F.2d 1188 (6th Cir. 1974) ..................................................17, 18, 21

*Rankin v. Rots*,
  No. 02-71045, 2006 U.S. Dist. LEXIS 45706 (E.D. Mich. June 28, 2006) ......................6, 11

*Rawlings v. Prudential-Bache Props., Inc.*,
  9 F.3d 513 (6th Cir. 1993) .......................................................17, 18

*In re Revco Sec. Litig.*,
  No. 851, 1992 U.S. Dist. LEXIS 7852 (N.D. Ohio May 6, 1992).............................18

*Roberts v. Texaco, Inc.*,
  979 F. Supp. 185 (S.D.N.Y. 1997) ..................................................32

*Robinson v. Ford Motor Co.*,
  04-00844, 2005 U.S. Dist. LEXIS 11673 (S.D. Ohio June 15, 2005).......................... *passim*

*Robinson v. Ford Motor Co.*,
  No. 04-00844, slip. op. (S.D. Ohio June 17, 2005) ...................................19

*In re S. Ohio Corr. Facility*,
  173 F.R.D. 205 (S.D. Ohio 1997), *rev'd on other grounds*, 24 F. App'x 520 (6th Cir.
  2001) ...........................................................................25

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
  No. 08-1432 (D.N.J. May 31, 2012) ...............................................26

*Smillie v. Park Chem. Co.*,
  710 F.2d 271 (6th Cir. 1983) .....................................................17, 18

*In re SPX Corp. ERISA Litig.*,
  No. 304-192, 2007 U.S. Dist. LEXIS 28072 (W.D.N.C. Apr. 13, 2007) ..................32

*Stop & Shop Supermarket Co. v. Smithkline Beecham Corp.*,
  No. 03-4578, 2005 U.S. Dist. LEXIS 9705 (E.D. Pa. May 19, 2005)......................25

*In re Syncor ERISA Litig.*,
  No. 03-2446 (C.D. Cal. Mar. 30, 2009) ...........................................26

*Taylor v. KeyCorp*,
  680 F.3d 609 (6th Cir. 2012) .....................................................7

*In re Telectronics Pacing Sys., Inc.,*
  186 F.R.D. 459 (S.D. Ohio 1999) *rev'd on other grounds*, 221 F.3d 870 (6th Cir.
  2000) ..........................................................................................................................18, 19

*In re Telectronics Pacing Sys., Inc.,*
  137 F. Supp. 2d 985 (S.D. Ohio 2001) ........................................................... *passim*

*Thornton v. E. Tex. Motor Freight,*
  497 F.2d 416 (6th Cir. 1974) ..................................................................................32

*UAW v. Gen. Motors Corp.,*
  No. 05-73991, 2006 U.S. Dist. LEXIS 14890 (E.D. Mich. Mar. 31, 2006) .............6

*In re Visteon Corp. ERISA Litig.,*
  No. 05-71205, 2007 U.S. Dist. LEXIS 96023 (E.D. Mich. Mar. 9, 2007) ..............32

*Williams v. Vukovich,*
  720 F.2d 909 (6th Cir. 1983) ................................................................................5, 8

*In re WorldCom, Inc. ERISA Litig.,*
  No. 02-4816, 2004 U.S. Dist. LEXIS 20671 (S.D.N.Y. Oct. 18, 2004), *vacated on
  other grounds*, 2004 U.S. Dist. LEXIS 22952 (S.D.N.Y. Nov. 15, 2004) ..............32

STATUTES

29 U.S.C. § 1132 .............................................................................................................2

29 U.S.C. § 1132(a) .......................................................................................................31

## PRELIMINARY STATEMENT

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiffs Anita Johnson, Joseph Stengel, and Donald Snyder (collectively, "Lead Plaintiffs") submit this memorandum of law in support of their motion for final approval of the Settlement of this Action for $8,500,000 in cash (plus accrued interest) and approval of the Plan of Allocation of the Settlement proceeds.[1]  Contemporaneously, pursuant to Rule 23(h) of the Federal Rules of Civil Procedure, Plaintiffs' Co-Lead Counsel firms Milberg LLP, Harwood Feffer LLP, and Katz, Greenberger & Norton ("Co-Lead Counsel") respectfully submit this memorandum in support of their motion for an order granting: (i) an award of attorneys' fees; (ii) reimbursement of expenses incurred by Co-Lead Counsel and other Plaintiffs' Counsel in connection with the successful prosecution of this ERISA class action; and (iii) case contribution awards to Lead Plaintiffs and named Plaintiff Ebrahim Shanehchian (together, "Plaintiffs").  Given the overlapping issues involved in both motions, Lead Plaintiffs and Co-Lead Counsel have filed one memorandum of law, in lieu of submitting two briefs and repeating factual and legal arguments.  The motions of Lead Plaintiffs and Co-Lead Counsel are supported by the Joint Declaration of Arvind Khurana and Robert I. Harwood, filed concurrently herewith (the "Joint Declaration" or "Joint Decl.").

## SUMMARY OF ARGUMENT

The Settlement is a result of more than five years of hard-fought litigation.  The law generally favors the settlement of complex class actions.  *Robinson v. Ford Motor Co.*, 04-00844, 2005 U.S. Dist. LEXIS 11673, at *9 (S.D. Ohio June 15, 2005) (Spiegel, J).  Courts will grant final approval to settlements such as this that are "fair, adequate, and reasonable, as well as

---

[1]    Unless otherwise defined herein, capitalized terms shall have the same meanings as set forth in the Stipulation and Agreement of Settlement dated November 14, 2012 (the "Settlement Agreement") (dkt. # 216).

consistent with the public interest." *Id.* at *11. In 2007, Lead Plaintiffs brought this action against Macy's, Inc. ("Macy's" or the "Company") and certain fiduciaries[2] of the Macy's, Inc. Profit Sharing 401(k) Investment Plan (the "Macy's Plan") and the May Department Stores Company Profit Sharing Plan (the "May Plan") (together, the "Plans") for improper conduct in violation of Section 502 of the Employee Retirement Income Security Act of 1974 as amended ("ERISA"), 29 U.S.C. § 1132.

This ERISA litigation arises out of Defendants continued investment of the Plans' assets in the Macy's, Inc. Stock Fund, when Defendants knew or should have known that Macy's stock was an imprudent plan investment. Following a detailed and independent investigation of the complex facts of the case, Plaintiffs filed the Amended Complaint on May 16, 2008. Defendants vigorously opposed this Action. However, Lead Plaintiffs obtained important victories when the Court denied Defendants' motion to dismiss, conditionally certified this case as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(1), and denied Defendants' motion for partial summary judgment. Plaintiffs also successfully defeated Defendants' Rule 23(f) Petition to the Sixth Circuit requesting permission to appeal the grant of class certification. Each of these complex challenges, among others, presented risks to the ultimate success of the case and provide support for approval of the Settlement obtained.

Co-Lead Counsel and Lead Plaintiffs believe this Action has significant merit and that they would likely prevail on the issues presented. However, they are also aware that continued

---

[2] "Defendants" are all fiduciaries of the Plans within the meaning of ERISA. They include: (A), the "Company," Macy's, Inc.; (B) the "Director Defendants," Karen M. Hoguet, Terry J. Lundgren Meyer Feldberg, Sara Levinson, Joseph Neubauer, Joseph A. Pichler, Joyce M. Roche, Karl M. von der Heyden, Craig E. Weatherup, Marna C. Whittington, William Stiritz, Stephen F. Bollenbach, Deirdre P. Connelly; and (C) the "Plan Committee" and the "Plan Committee Defendants," Stephen J. O'Bryan, Robert G. Zimmer, Dave Clark, Dick Brickson, R.B. Harrison, Tony Spring, Ron Tysoe, Jim Gray, Mike Osborn.

litigation due to Defendants' steadfast denial of liability would be costly and time-consuming and might ultimately jeopardize any recovery for the Class. Co-Lead Counsel are highly experienced in prosecuting ERISA breach of fiduciary duty class actions. At the time of settlement, following over five years of litigation, Lead Plaintiffs and Co-Lead Counsel fully assessed the strengths and weaknesses of Lead Plaintiffs' claims and concluded that the Settlement is a very good result under the circumstances and is in the best interest of the Class. For these reasons and those described herein and in the Joint Declaration, the Court should find that the proposed Settlement and Plan of Allocation are "fair, reasonable, and adequate" under Fed. R. Civ. P. 23(e)(2) and should be granted final judicial approval. Likewise, the Court should grant final certification of the Settlement Class.

Additionally, the Court should approve the requested fees, expenses, and contribution awards. The recovery of $8.5 million in cash (plus accrued interest) was achieved through the skill, work, dedication, and effective advocacy of Co-Lead Counsel and other Plaintiffs' Counsel. As payment for services rendered in achieving such a result, Co-Lead Counsel seek an award of attorneys' fees in the amount of 30% of the Settlement Fund, plus reimbursement of expenses reasonably incurred by Lead and Plaintiffs' Counsel in the prosecution of the Action in the amount of $435,916.32 plus interest on those amounts at the same rate and for the same period of time as that earned by the Settlement Fund until paid. Plaintiffs also seek case contribution awards for the Class Representatives and the Named Plaintiff in the amounts of $5,000 and $1,000, respectively.

Courts in the Sixth Circuit have established that attorneys' fees equating to between 20 and 50 percent of the settlement amount are appropriate. *See, e.g., Brotherton v. Cleveland,* 141 F. Supp. 2d 907, 910 (S.D. Ohio 2001) (Spiegel, J.) (percentage awards in common fund cases

range from 20-50 percent of the fund); *In re Cincinnati Gas & Elec. Co. Sec. Litig.*, 643 F. Supp. 148, 150 (S.D. Ohio 1986) (Spiegel, J.) (typical award from 20-50 percent of fund).   In this action, attorneys' fees equaling 30 percent of the Settlement Fund results in a fair and reasonable fee, especially given that that the monetary result provides a benefit to the class, and society has an interest in seeing that the wrongdoing alleged is prevented in the future. The services provided throughout the litigation were undertaken on a contingency basis.   Co-Lead Counsel is highly skilled and experienced in ERISA actions such as this, which aided their ability to litigate especially complex substantive and logistical issues presented by the case.

Plaintiffs' Counsel and their professional support staff expended nearly thousands of hours in the prosecution of this Action, with a resulting lodestar of nearly $3.6 million.   The requested fee of 30% of the Settlement Fund or $2.55 million, is fair and reasonable considering the risks that Plaintiffs' Counsel took in prosecuting this Action under the applicable standards in the Sixth Circuit.   The expenses requested are also reasonable in amount and were necessarily incurred for the successful prosecution of the Action.   Similarly, the proposed case contribution awards are reasonable given the Plaintiffs' dedication to the prosecution of this Action for over five years.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

A detailed description of the factual background and procedural history of this Action is set forth in the Joint Declaration.  For the sake of brevity, it is not repeated here, but is instead incorporated by reference.

## ARGUMENT

### I.  THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

The law generally favors the settlement of complex class actions.  *Robinson*, 2005 U.S. Dist. LEXIS 11673, at *9 citing *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 245 (S.D. Ohio 1991)).  Although Rule 23(e) is silent as to the standard courts should apply to approve or disapprove a proposed settlement, a court should determine whether the proposed settlement is "fair, adequate, and reasonable, as well as consistent with the public interest."  *Robinson*, 2005 U.S. Dist. LEXIS 11673, at *11 (quoting *Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990)); *Williams v. Vukovich,* 720 F.2d 909, 921 (6th Cir. 1983).  This is determined by examining the settlement "'in its entirety and not as isolated components.'"  *Robinson*, 2005 U.S. Dist. LEXIS 11673, at *11-12 (quoting *Enter. Energy*, 137 F.R.D. at 245).  The court is not "'to determine the merits of the controversy or the factual underpinning of the legal authorities advanced by the parties.'"  *Robinson*, 2005 U.S. Dist. LEXIS 11673, at *12 (quoting *Vukovich*, 720 F.2d at 921).

When determining whether the proposed settlement is fair, adequate, and reasonable, the Court takes into account several factors: (1) the plaintiffs' likelihood of ultimate success on the merits balanced against the amount and form of relief offered in settlement; (2) the complexity, expense and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the judgment of experienced trial counsel; (4) the nature of the negotiations; (5) the objections raised by the class members; and, (6) the public interest. *Robinson*, 2005 U.S. Dist. LEXIS 11673, at *12 (citing *Vukovich*, 720 F.2d at 922); *Enter. Energy*, 137 F.R.D. at 245; *see also Int'l Union, UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

As discussed herein, all these factors support that the Settlement is fair, adequate, and reasonable. Therefore, the Settlement should be approved.

**A.      Lead Plaintiffs' Likelihood of Ultimate Success on the Merits Balanced Against the Amount of Settlement Support Final Approval**

The first factor for final approval of a proposed settlement is the plaintiffs' likelihood of ultimate success on the merits balanced against the amount and form of relief offered in settlement. *Robinson*, 2005 U.S. Dist. LEXIS 11673, at *13. The ultimate question to be answered is "'whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued.'" *Rankin v. Rots*, No. 02-71045, 2006 U.S. Dist. LEXIS 45706, at *9 (E.D. Mich. June 28, 2006) (quoting *Manual for Complex Litigation (Third)* § 30.42 at 238 (1995); *UAW v. Gen. Motors Corp.*, No. 05-73991, 2006 U.S. Dist. LEXIS 14890, at *46 (E.D. Mich. Mar. 31, 2006). The real possibility that plaintiffs would not have recovered an amount equal to the settlement amount weighs in favor of the settlement. *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 905 (S.D. Ohio 2001).

As evidenced by the vigor with which they have prosecuted this litigation, and the amount of resources they have expended toward that end, Lead Plaintiffs are optimistic about their ultimate success in this matter. Despite the strengths of this litigation, however, Lead Plaintiffs also recognize that they faced risks in bringing this case to trial. ERISA imprudence claims face daunting challenges in an evolving area of law. *See, e.g., In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 496 (E.D. Mich. 2008) (observing that the risks inherent in any litigation are "even more acute in the complex area[] of ERISA law"). For example, the Sixth Circuit recently announced that demonstrating imprudence is an evidentiary standard that requires an evaluation of the totality of the circumstances. *See generally Pfeil v. State St. Bank & Trust Co.,* 671 F.3d 585, 591-94 (6th Cir. 2012), *cert. denied*, 133 S. Ct. 758

(2012). Although the standard in *Pfeil* contemplates that many factors can overcome the presumption of prudence in ERISA cases, there remained a risk that Plaintiffs would lack the appropriate evidence to prove that Defendants knew or should have known that that Macy's/May integration was not proceeding as smoothly as claimed. This is especially true in light of the contentious discovery disputes, as discussed in greater detail below.

There was also a significant risk that the amount of any recovery could have been reduced between the date of the Settlement and the date the case would ultimately be tried to a verdict because the parties vigorously dispute the appropriate measure of loss. The measure of loss ultimately accepted could have resulted in a recovery that was smaller than that achieved by the Settlement --- even if liability were established on all counts of the Amended Complaint. The Sixth Circuit's opinion in *Taylor v. KeyCorp*, 680 F.3d 609, 613 (6th Cir. 2012) presents a risk of limiting damages for plaintiffs asserting ERISA imprudent claims because the court adopted the "out-of-pocket" damages analysis instead of the "alternative investment" damage measure deciding whether a plaintiff had standing to assert claims. Defendants would have continued to challenge Plaintiffs' damage analysis, and there was a risk that Plaintiffs would not have been able to successfully demonstrate their anticipated amount of damages.

Defendants raised several affirmative defenses that also posed a risk to the ultimate viability of the case. There have been analogous ERISA actions that proceeded to trial but were ultimately unsuccessful. *See, e.g.*, *Brieger v. Tellabs, Inc.*, 659 F. Supp. 2d 967 (N.D. Ill. 2009). There was a genuine risk that even if Plaintiffs had prevailed at trial, Defendants would have pursued a lengthy and expensive appeal. Weighing the strengths of Lead Plaintiffs' claims against the risks of litigating those claims to a verdict at trial favors the conclusion that the Class's interest is better served if the litigation is resolved by the Settlement rather than pursued.

As such, the $8.5 million settlement amount that Co-Lead Counsel achieved is fair, adequate, and reasonable under the circumstances.

**B.     The Complexity, Expense and Likely Duration of the Litigation**

The costs, complex legal issues, uncertainty, and length of further litigation, especially in class actions, weigh in favor of settlement. *Robinson*, 2005 U.S. Dist. LEXIS 11673, at *14; *see also Vukovich*, 720 F.2d at 922 (settlements should represent "a compromise which has been reached after the risks, expense and delay of further litigation have been assessed."). "Generally speaking, most class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001) (Spiegel, J.) (internal quotations and citation omitted).

Here, Defendants demonstrated a commitment to defend this case through every stage of litigation and, if not for the Settlement, the parties would have continued to fiercely litigate all issues and the expense and time involved would have been substantial. Defendants filed motions to transfer venue and for dismissal, opposed class certification that involved battling experts and a Rule 23(f) Petition with the Sixth Circuit, and filed a motion for partial summary judgment. Defendants would have continued to mount an aggressive defense, and potentially would have sought additional, time-consuming and expensive appeals.

Discovery was hotly-contested at every turn and Plaintiffs submitted several affidavits under Rule 56 detailing the disputes, delays, and need for additional discovery. Had the case not settled, the parties were set to renew discovery, and Plaintiffs were preparing to take depositions of the Defendants (among others), further negotiate the scope of e-discovery, and seek additional, substantial productions of documents. Plaintiffs anticipated many more discovery disputes given the historical pattern of such disputes. Similarly, Plaintiffs anticipated additional

disputes on the issue of the appropriate measure of damages.  All of these issues would have

depleted the time and resources of both parties.  As one court noted:

> Given the time value of money, a future recovery, even one greater
> than the proposed Settlement, may be less valuable to the Class
> than receiving the benefits of the proposed Settlement now.  To
> delay this matter further would not substantially benefit the Class.
> *See Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 903 (S.D. Ohio
> 2001).

*In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 374 (S.D. Ohio 2006).

The $8.5 million Settlement results in an immediate and tangible recovery, without the

considerable risk, expense and delay of continued discovery, summary judgment motions, and

trial and post-trial litigation.  At the time of settlement, over 200 documents had been filed with

the Court and many more would have followed had the Action continued.  Thus, this factor

favors final approval of the Settlement because it ensures substantial and prompt payment to the

Class "in a highly complex action, undiminished by further expenses, and without delay, costs,

and uncertainty of protracted litigation." *Id.*

### C.   Lead Plaintiffs Have Engaged in Sufficient Discovery and Have Conducted a Thorough Investigation to Identify the Strengths and Weaknesses of Their Case and the Propriety of Settlement

A full evaluation of the strengths and weaknesses of the parties' cases weighs in favor of

a determination that the settlement is fair, adequate, and reasonable.  *Robinson*, 2005 U.S. Dist.

LEXIS 11673, at *14.  Although the amount of discovery completed is a factor to be considered

in the settlement approval process, there is no minimum or definitive amount of discovery that

must be undertaken to satisfy this fact.  *See, e.g., In re Jiffy Lube Sec. Litig.* 927 F.2d 155, 159

(4th Cir. 1991).  Indeed, discovery may not be necessary at all for the parties to fully evaluate the

merits of the plaintiff's claims.  *Id.* (approving settlement after four months of litigation and prior

to any formal discovery); *see also Horton v. Merrill Lynch, Pierce, Fenner & Smith*, 855 F.

Supp. 825, 829 (E.D.N.C. 1994) (approving settlement in case in which discovery consisted of production of 3,800 pages of documents and two "confirmatory depositions"). However, extensive discovery negotiations weigh in favor of finding that the parties reached a settlement after full evaluation of the strengths of their respective cases. *Robinson*, 2005 U.S. Dist. LEXIS 11673, at *14.

Initially, Lead Plaintiffs reviewed and analyzed publicly available information regarding Macy's, including the Company's SEC filings, Plan documents, financial statements, press releases, conference call transcripts, analysts' reports, and public notices. Co-Lead Counsel also interviewed numerous former employees of Macy's with knowledge of the events that let to this Action. Discovery began in September 2009 and was intended to proceed in two phases. However, abundant delays and disputes undermined Plaintiffs' attempts to obtain document production. In fact, over eight months passed before Plaintiffs received a small production of less than 1,000 hard copy documents. Procurement of electronic documents proved even more challenging and ultimately involved many meet and confers between the parties and hearings with the Magistrate Judge before agreements on production were reached. Although Plaintiffs continued to contest the appropriateness of the productions made, Defendants produced approximately 16,000 documents in the first phase of discovery. Plaintiffs diligently reviewed those documents, located evidence to support their claims, and identified deficiencies in the production. Those efforts enabled Plaintiffs to successfully oppose Defendants' summary judgment motion and to fully evaluate the strengths and weaknesses of their case. Accordingly, this factor weighs in favor of a fair, adequate, and reasonable settlement. *Robinson*, 2005 U.S. Dist. LEXIS 11673, at *14.

**D.     The Judgment of Experienced Co-Lead Counsel Supports Settlement**

When determining if a settlement is fair, adequate, and reasonable, the "Court may give weight to the fact that Plaintiffs' Counsel, who are fully familiar with the facts [of the action] and have substantial expertise litigating precisely this type of ERISA class action, favor the Settlement and believe that it is in the best interest of the proposed Settlement Class." Preliminary Approval Motion at 8; *see also Robinson*, 2005 U.S. Dist. LEXIS 11673, at *15-16; *Rankin*, 2006 U.S. Dist. LEXIS 45706, at *9 ("The Court should also consider the judgment of counsel").

Co-Lead Counsel's experience litigating ERISA imprudent claims and complex class actions supports the Settlement.  Counsel are highly regarded complex litigation and class actions firms with well-established records of successfully resolving ERISA and other  class actions, as well as other complex litigation.  As such, Co-Lead Counsel's recommendation for settlement holds that this factor leans in favor of approval of the Settlement.

**E.     The Nature of the Negotiations Demonstrates a Fair, Non-Collusive Process**

In absence of evidence to the contrary, a court should presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusions. *Telectronics*, 137 F. Supp. 2d at 1018 (citing Herbert S. Newberg & Alba Conte, *Newberg on Class Actions* § 11.51 (3d ed. 1992) ("[C]ourts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered.").)  Here, the Court does not have to presume a lack of collusion; as a party to the Settlement discussions, the Court knows the parties' hard-fought positions that they ultimately resolved.

The Settlement is the product of serious, informed, non-collusive negotiations that included two mediations, and a settlement conference before the Court.  The parties engaged in

their first mediation on June 13, 2010 following the Court's denial of Defendants' motion to dismiss and commencement of discovery. The parties assessed the strengths and weaknesses of the case at that time, but were not able to resolve the Action. Nearly a year later, the Court ordered a settlement conference, which occurred on September 7, 2011. During that hearing, the parties disputed, among other things, the approach to damages. Although no resolution was reached, the Court's involvement greatly assisted to focus the legal issues. Importantly, the Court invited renewed briefing under Rule 56(d), and Plaintiffs' subsequent motion under Rule 56(d) was granted. Following that ruling, the parties renewed discussions regarding a potential settlement. With the assistance of JAMS mediator, David Geronemus, Esq., on July 24, 2012, the parties agreed in principle to settle the Action for $8.5 million. As such, the extensive and non-collusive efforts of the parties strongly weigh in favor of final approval.

### F.  Lack of Objections Raised by the Class Members

The deadline for filing objections is March 21, 2013. To date, no objections have been received. Co-Lead Counsel will address any objections, should there be any, once the deadline for objections has passed.

### G.  The Settlement is Consistent with the Public Interest

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)). ERISA class actions are no exception. Many courts have noted the particular complexity of ERISA class actions. *See, e.g., In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 228 F.R.D. 541, 565 (S.D. Tex. 2005); *In re IKON Office Solutions, Inc. Sec. Litig.*, 209 F.R.D. 94, 104-07 (E.D. Pa. 2002).

The Settlement serves the public interest by bringing to favorable close a lawsuit that affects the retirement security of thousands of Macy's employees. "Encouraging qualified counsel to bring inherently difficult and risky but beneficial class actions like this case benefits society." *In re Cardizem*, 218 F.R.D. at 534. In addition, there are no contravening public interest justifications present in this litigation. Thus, this factor as well weighs strongly in favor of approval.

Taken together, each of the factors to evaluate the fairness of a class action settlement support final approval of the Settlement.

## FINAL CLASS CERTIFICATION

On preliminary review, the Court found that the proposed Settlement on a class-wide basis was adequate and met the standards set forth in Fed. R. Civ. P. 23 permitting the Settlement to proceed to final approval. Dkt. No. 218, Order for Notice and Hearing ("Order") at 1. Lead Plaintiffs now seek final class determination based on the same standards articulated on preliminary review. Specifically, Lead Plaintiffs seek (i) the designation of Anita Johnson, Donald Snyder, and Joseph Stengel as representatives of the Settlement Class; (ii) the designation of Harwood Feffer LLP, Milberg LLP, and Katz, Greenberger & Norton LLP as class counsel for the Settlement Class, and (iii) certification for settlement purposes of the non-opt out Class in the Action pursuant to Rule 23(b)(1), defined as follows:

> All individuals who were Participants in either the Macy's Plan or the May Plan at any time between February 27, 2005 and July 24, 2012 whose Plan account included an investment in the Macy's Company Stock Fund at any time during that period. The Class specifically excludes the Individual Defendants, their Immediate Family, and all current officers and directors of Macy's.[3]

---

[3] The Class definition has been modified from the class certified by the Court in March 2011, to include an end date to reflect the proposed plan of allocation and to reflect a recent Sixth Circuit opinion which addressed damages in ERISA actions.

## II.     NOTICE TO PROSPECTIVE CLASS MEMBERS WAS ADEQUATE

In determining whether to grant final approval of a proposed settlement, the Court must

find that adequate notice was issued to all prospective class members, in accordance with due process

concerns and Rule 23 of the Federal Rules of Civil Procedure.  In order to satisfy due process

considerations, notice to Class members must be "reasonably calculated, under all the circumstances,

to apprise interested parties of the pendency of the action and afford them an opportunity to present

their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).  In

other words, "[n]otice of a class settlement need only 'fairly apprise the prospective members of

the class of the terms of the proposed settlement and of the options that are open to them in

connection with [the] proceedings.'"  *Bower v. MetLife, Inc.*, No. 09-351, 2012 U.S. Dist. LEXIS

149117, at * 18 (S.D. Ohio Oct. 17, 2012) (quoting *Int'l Union, UAW v. Ford Motor Co.*, No. 05-

74730, 2006 U.S. Dist. LEXIS 70471, at *114 (E.D. Mich. July 13, 2006)); *see also In re*

*Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 U.S. Dist. LEXIS 150427, at *38 (E.D.

Mich. Dec. 13, 2011) ("The contents of a Rule 23(e) notice are sufficient if they inform the class

members of the nature of the pending action, the general terms of the settlement, that complete and

detailed information is available from the court files, and that any class member may appear and be

heard at the hearing.") (quoting *Newberg on Class Actions* § 8.32 (4th ed. 2010)).

The Court already determined that the form of the Notice and Publication Notice were

proper.  Order at 5.  Lead Plaintiffs now seek Court determination that the actual notice program

was fair, adequate and appropriate.  It is not necessary that every class member receive actual

notice to meet due process considerations, so long as class counsel acted reasonably in selecting

means likely to inform persons affected. *In re Integra Realty Res., Inc.,* 262 F.3d 1089, 1110-11

(10th Cir. 2001) (holding Rule 23 and due process requisites satisfied where the record indicated

that seventy-seven percent of class members actually received notice of the settlement). "For non-

opt-out cases, such as the ERISA Actions, Rule 23 requires only such unspecified appropriate notice as the court may direct." *In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436, 448 (S.D.N.Y. 2004) (quoting Fed. R. Civ. P. 23(c)(2)(A)) (internal quotations omitted).

In accordance with the Order's requirements, the approved Mail Notice was sent by first class mail to over 200,000 Class Members on January 10, 2013. *See* Affidavit of Michael Rosenbaum sworn to February 25, 2013 submitted herewith as Exhibit A. The Long Form Notice and other settlement-related documents were placed on the website set forth in the Mail Notice at www.berdonclaims.com/macys. Further, Publication Notice was disseminated over the *PR Newswire* on January 24, 2013. *Id.* In addition, the Settlement Administrator, provided a toll-free number to answer questions about the Settlement. *Id.* As required by Federal Rule of Civil Procedure 23(c)(2), the Mail and Long Form Notice informed members of the Settlement Class of the claims alleged in the Action, the terms of the Settlement and their rights as members of the Settlement Class to object to Settlement, or otherwise object to the proposed attorneys' fees and expenses and/or the contribution award to the Plaintiffs. *Id.*

Accordingly, the notice program fairly apprised the Settlement Class members of the Settlement and their options and satisfies the requirements of due process.

## III.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE

Upon approval of the Settlement and entry of an order approving distribution, the Settlement Fund (less payment of certain Court-approved fees and expenses, including settlement administrative costs (the "Net Settlement Fund Proceeds")) shall be distributed to the Settlement Class Members. In the Order, the Court found the Plan of Allocation to be fair reasonable and adequate and ordered that Co-Lead Counsel present the Plan of Allocation for final approval. Order at 3. Review of a plan of allocation falls within this Court's broad supervisory power over the settlement, its proceeds, and their ultimate disposition. *In re PaineWebber Ltd. P'ships*

*Litig.*, 171 F.R.D. 104, 132 (S.D.N.Y.) ("The review of the plan of allocation is squarely within the discretion of the district court"), *aff'd*, 117 F.3d 721 (2d Cir. 1997). The standard for reviewing a proposed plan of allocation is the same as the standards of fairness and reasonableness that apply to review of proposed settlements. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992). "A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable." *In re Oracle Sec. Litig.*, No. 90-0931, 1994 U.S. Dist. LEXIS 21593, at *3 (N.D. Cal. June 16, 1994); *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, MDL No. 1500, 2006 U.S. Dist. LEXIS 17588, at *59 (S.D.N.Y. Apr. 6, 2006) (plan of allocation provided "recovery to damaged investors on a pro-rata basis according to their recognized claims of damages.").

The proposed plan of allocation was developed in consultation with Plaintiffs' damages expert and Settlement Administrator and takes into account not only recent Sixth Circuit precedent, but, like the notice plan, the anticipated costs associated with distribution to a large class. After payment of costs, taxes, attorneys' fees and expense, the Net Settlement Fund will be proportionately allocated by the Settlement Administrator to qualifying Class Members based on the Plan of Allocation annexed to the Settlement Agreement and as detailed in the Notice of Class Action Settlement. The eligible Class Members do not need to take any action to receive payment.

## IV. THE COURT SHOULD AWARD ATTORNEYS' FEES AND EXPENSES

For their efforts in creating a common fund for the benefit of the Class, Co-Lead Counsel seek an award of reasonable attorneys' fees and expenses. Attorneys who represent a class and aid in the creation of a settlement fund are entitled to reasonable compensation from the settlement fund for their services. This rule, referred to as the "common fund doctrine," is firmly rooted in Sixth Circuit case law. *See, e.g., Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d

513, 516 (6th Cir. 1993) ("In this Circuit, we require only that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances."); *Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir. 1983) (same); *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974) (same).

**A.    A Reasonable Percentage of the Fund Created Is an Appropriate Method of Awarding Attorneys' Fees in Common Fund Cases**

In the context of class action settlements, courts in the Sixth Circuit traditionally employ one of two methods when determining reasonable attorneys' fees in common fund cases: (1) the percentage method, in which the court awards the attorneys a percentage of the settlement fund sufficient to provide plaintiffs' attorneys with a reasonable fee; and (2) the lodestar method, in which the court calculates the lodestar by multiplying the number of hours expended by a reasonable hourly rate and then adjusts the lodestar to by an appropriate multiplier to reflect the time and labor expended, the novelty and difficulty of the issues involved, and the results achieved, among other factors. *See Rawlings*, 9 F.3d at 516 (comparing percentage and lodestar methods).

District courts in the Sixth Circuit have exercised their discretion and employed the percentage method in awarding fees in common fund cases. *See Brotherton*, 141 F. Supp. 2d at 910 ("The preferred method in common fund cases has been to award a reasonable percentage of the fund."); *In re Telectronics Pacing Sys., Inc.*, 186 F.R.D. 459, 483 (S.D. Ohio 1999) (Spiegel, J.) ("The percentage of the fund method is more advantageous than the lodestar method") *rev'd on other grounds*, 221 F.3d 870 (6th Cir. 2000); *In re Nationwide Fin. Servs. Litig.*, No. 08-00249, 2009 U.S. Dist. LEXIS 126962, at *35 (S.D. Ohio Aug. 18, 2009) ("[I]n the Southern District of Ohio, the preferred method is to award a reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier."); *In re Broadwing,* 252 F.R.D. at 381

(percentage of the fund method is preferred in the Southern District of Ohio); *Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1277-80 (S.D. Ohio) (awarding percentage of fund, *aff'd* 102 F.3d 777 (6th Cir. 1996)); *In re Revco Sec. Litig.*, No. 851, 1992 U.S. Dist. LEXIS 7852, at *9-10 (N.D. Ohio, May 6, 1992) (noting a trend of courts using the percentage of the fund approach because, *inter alia*, it encourages early settlement). Using the percentage method is appropriate in common fund cases because it reflects the results achieved for the Class. *In re Telectronics*, 186 F.R.D. at 483.

### B. A Fee of 30% of the Fund Is Reasonable

A guiding principle in the Sixth Circuit is that a fee award be reasonable under the circumstances. *Rawlings*, 9 F.3d at 516. The Sixth Circuit has articulated the following six factors for evaluating the reasonableness of a fee request: (1) the value of the benefit rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides. *See Ramey*, 508 F.2d at 1196; *see also Smillie*, 710 F.2d at 275 (citing the *Ramey* factors in affirming fee award). Each of these factors supports approval of the requested attorneys' fees.

#### 1. The Settlement Provides a Valuable Benefit to the Class

The efforts of Plaintiffs' Counsel have resulted in an $8.5 million cash recovery for the Class without the substantial risk, delay, expense, and uncertainty of continued litigation and trial. This Court has found a benefit to the Class exists where the Class receives a substantial monetary benefit. *See Robinson v. Ford Motor Co.*, No. 04-00844, slip. op. (S.D. Ohio June 17,

2005) [4] (valuable monetary relief is a notable result for the class); *In re Cincinnati Gas*, 643 F. Supp. at 150 (same); *In re Telectronics*, 186 F.R.D. at 483 (same). Given the significant risks faced by Plaintiffs in proving both liability and damages, the size of the Settlement Fund provides a notable benefit to the Class who may have otherwise received no relief. *See In re Telectronics*, 186 F.R.D. at 483 (finding the settlement valuable where the potential for protracted litigation creates a risk of no relief to the Class). The number of persons benefited by the Settlement also supports the requested fee award. More than 200,000 Notices were sent to potential Class Members, a substantial number of which are expected to benefit from the Settlement. In short, the Settlement will provide immediate compensation to the Class and will avoid the substantial risks of a smaller recovery or no recovery at all and weighs in favor of granting the requested fee.

### 2.     The Settlement Provides a Benefit to Society

Rewarding class action attorneys benefits society because most claimants in similar situations would not have the resources to litigate an individual case and the individual recoveries are often too small to justify the burden and expense of such complex litigation. *See In re Telectronics*, 137 F. Supp. 2d at 1043 ("Attorneys who take on class action matters serve a benefit to society and the judicial process by enabling . . . claimants to pool their claims and resources" to achieve a result they could not obtain alone.). Moreover, society has a interest in seeing similar wrongdoing prevented in the future. *See In re Cincinnati Gas,* 643 F. Supp. at 150 ("society has an interest in seeing that attorneys who bring such lawsuits [to discourage mismanagement within companies] be compensated to insure such future representation should it be appropriate in other instances."). During the five plus years that Counsel litigated the Action,

---

[4]     A compendium of the slip opinions and orders referenced herein is being filed contemporaneously with this memorandum as Exhibit F.

they expended significant time and monetary resources, consulted with experts, and conducted extensive discovery.  Without the Action, it is highly unlikely that individual claimants would have had the resources to pursue claims of this magnitude.  Moreover, protecting the retirement funds of employees and obtaining recompense when those funds are mismanaged, is in the public interest and supports the requested fee award.

### 3.       Services Rendered Were on a Contingent Fee Basis

Co-Lead Counsel undertook this Action on a contingent fee basis, assuming a significant risk that the Action would yield no recovery and leave them entirely uncompensated for their efforts.  Unlike counsel for Defendants, who are paid an hourly rate and reimbursed for their expenses on a regular basis, Co-Lead Counsel have not been compensated for any time or expense since this case began in 2007, expending over 7,000 hours, equating to nearly $3.6 million in lodestar, in obtaining this result for the Class knowing that if their efforts were not successful, no fee would be obtained.

The Sixth Circuit has recognized the importance of the contingent nature of an action in determining the reasonableness of a fee.  *See In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp. 2d 752 (S.D. Ohio 2007) (noting that "[s]everal courts consider the risk of non-recovery the most important factor in the fee determination."); *see also Teletronics*, 137 F. Supp 2d at 1043 ("we recognize that contingency fee arrangements indicate that there is a certain degree of risk in obtaining a recovery.").  The significant outlay of case and personnel resources by Co-Lead Counsel has been wholly dependent upon a substantial recovery for the Class in the face of highly skilled defense lawyers and the hurdles presented by ERISA jurisprudence.

Thus, the contingent nature of Counsel's representation strongly favors approval of the requested fee.

### 4. The Value of the Services on an Hourly Basis

The value of services can be calculated using a simple lodestar formula of the number of hours worked multiplied by an hourly rate. Plaintiffs' Counsel who worked on this case have expended over 7,000 hours to date. Based on their current rates, Plaintiff's Counsel's combined lodestar is approximately $3.6 million. The declarations from Plaintiffs' Counsel, attached hereto as Exhibits B-E, set forth the actual hours worked and hourly rates charged, as well as the training, background, experience, and skill that justify these rates. As discussed in greater detail below, the value of the services provided to the Class on an hourly basis are reasonable and support the requested fee award.

### 5. Complexity of the Litigation

The complexity of the litigation is an important factor in determining a fair fee award. *See Ramey*, 508 F.2d 1188. Importantly, this Court has recognized that a counsel's innovation when faced with a high level of complexity in an action is a reason to award a high fee. *See In re Cincinnati Gas*, 643 F. Supp. at 152 (when evaluating complexity, "[i]t is creative lawyering that will earn the higher fee award from this Court, as it represents the hallmark of a gifted professional.").

ERISA litigation is acknowledged to be a very specialized and complex area of the law. *Akers v. Palmer*, 71 F.3d 226, 229 (6th Cir. 1995) ("ERISA is a comprehensive, complex remedial statute"); *In re Nortel Networks Corp. "ERISA" Litig.*, No. 03-md-01537, 2009 U.S. Dist. LEXIS 130143, at *42 (M.D. Tenn. Sept. 2, 2009) ("ERISA claims are particularly complex"); *In re Broadwing,* 252 F.R.D. at 382 ("An ERISA case involves highly-specialized and complex areas of law."). As discussed in the Joint Declaration, each phase of litigating this case was complex. First, Defendants unsuccessfully sought to transfer this action to the Southern District of New York, where two actions filed against Macy's under §10(b) of the Securities

Exchange Act of 1934 were pending. Those securities cases were ultimately dismissed a year before Plaintiffs' claims were sustained. Co-Lead Counsel developed the facts and theories of the ERISA action independent of any private or government case, which weighs in favor of the requested fee. *See Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 640 F. Supp 697, 704 (S.D. Ohio 1986) (Spiegel, J.) ("Of great influence to the Court [when considering complexity] is the fact that counsel began this suit from the ground floor up."). Subsequently, Co-Lead Counsel successfully defeated Defendants' attacks on the pleadings by creatively arguing against Defendants' "absolute causation" theory. Following the motion to dismiss, the parties embarked on discovery, which proved challenging at every turn. Co-Lead Counsel pushed for many months to reach an agreement with Defendants regarding discovery, and ultimately spent nearly a year procuring a first round of documents. Co-Lead Counsel reviewed tens of thousands of pages of documents, and identified many document production deficiencies, a factor that in and of itself weighs in favor of ample compensation. *See In re Cincinnati Gas,* 643 F. Supp at 150 ("Digestion of voluminous materials, subsequent assessment of which avenues require pursuit, and eventual command of the facts that would have been elicited at trial are no inconsequential feat and, without question, deserve ample compensation.").

Following the lifting of a discovery stay for settlement discussions in 2010, Co-Lead Counsel resumed their discovery efforts and contemporaneously engaged in a year-long, but ultimately successful battle over class certification. As described in the Joint Declaration, class certification was hotly-contested and involved related motions to intervene and to strike expert testimony and expert discovery. When Defendants lost their challenge to class certification they filed a petition to the Sixth Circuit, which was denied. Following that denial, the Court ordered a status conference to discuss potential settlement. Although those discussions did not

immediately lead to a settlement, the Court's assistance in navigating the complex issues of case, ultimately aided the parties in reaching a final resolution during a subsequent mediation.

During the battles over both discovery and class certification, Defendants moved for partial summary judgment and partial judgment on the pleadings. Defendants raised numerous legal and factual issues which led to extensive briefing and further expert discovery. Plaintiffs countered with a Rule 56(d) motion, which was granted and subsequently followed by the final and successful mediation effort by the parties. Had the mediation failed, Co-Lead Counsel anticipated continued discovery battles, renewed summary judgment briefing, and new and complex arguments based on intervening changes in Sixth Circuit jurisprudence. In sum, this highly complex case has been extensively litigated and vigorously contested over an extended period of time. Despite the difficulty of the issues raised, Co-Lead Counsel secured an excellent result for the Class. As a result, this factor weighs in favor of the requested fee award.

### 6. Professional Skill of Counsel

The attorneys representing the Class are experienced class action and ERISA litigators and have fully demonstrated their knowledge, skill and efficiency during this proceeding. *Bowling*, 922 F. Supp. at 1282 (trial judge may gauge this factor by, among other things, observing the attorney's work product, and ability to successfully negotiate a settlement agreement and obtain approval of the court). Co-Lead Counsel are experienced and skilled practitioners in the fields of securities class actions and complex litigation. *See* Firm Résumés attached to Exhibits B-E. Co-Lead Counsel confronted and overcame a number of significant obstacles to success over six years of intense litigation. As a result of Co-Lead Counsel's diligent efforts and their skill and expertise, Co-Lead Counsel were able to negotiate an excellent Settlement for the Class.

As detailed in the Joint Declaration, Co-Lead Counsel conducted an extensive pre-filing investigation that included witness interviews and a thorough review of publicly available information. As a result of their efforts, Co-Lead Counsel were able to plead detailed allegations and defeat Defendants' motion to dismiss.  Co-Lead Counsel also demonstrated the quality of their work in successfully obtaining certification of the Class and, ultimately, in achieving the Settlement totaling $8.5 million on behalf of the Class.

The scope and quality of the work performed by Co-Lead Counsel are also reflected in the substantial and difficult discovery conducted.  Co-Lead Counsel engaged in extensive negotiations with counsel for Macy's and were able to develop a discovery plan, which was no easy feat.  Plaintiffs also issued subpoenas to seven non-parties.  Despite the discovery disagreements between Lead Plaintiffs and both the Individual Defendants and other non-parties, Co-Lead Counsel were adept in working with opposing counsel and counsel for the non-parties in order to work through these disagreements.  Co-Lead Counsel were in the process of attempting to procure additional documents, and preparing for depositions and were always willing, as was made clear to Defendants to take the Action to trial if necessary.

Moreover, Co-Lead Counsel undertook this effort without the benefit of any governmental investigation or express admission or restatement by Defendants.[5]  The outstanding result achieved by Co-Lead Counsel in the absence of any such assistance from governmental investigations or Company admissions is a further testament to the skill and tenacity of counsel.

---

[5]    *See, e.g., Stop & Shop Supermarket Co. v. Smithkline Beecham Corp.*, No. 03-4578, 2005 U.S. Dist. LEXIS 9705, at *39 (E.D. Pa. May 19, 2005) (awarding the requested amount of attorneys' fees where "this action was riskier than many other antitrust class actions because there was no prior government investigation, or prior finding of civil or criminal liability based on antitrust violations, in this case.").

The quality and vigor of opposing counsel is also important in evaluating the quality of the work done by Co-Lead Counsel. *See, e.g., In re Equity Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977). Defendants here were vigorously represented by some of the country's largest defense firms, including Morgan, Lewis, Bockius LLP, as well as Jones Day.

## V.    THE REQUESTED FEE AWARD IS REASONABLE WHEN COMPARED TO AWARDS FEES IN SIMILAR CASES

Co-Lead Counsel's request for attorneys' fees is consistent with attorneys' fees awarded by courts in this Circuit and elsewhere. *See, e.g., Brotherton,* 141 F. Supp. 2d at 910-911 (typical percentage awards in common fund cases range from 20-50 percent of the fund); *In re Cincinnati Gas,* 643 F. Supp. at 150 (typical award from 20-50 percent of fund). Courts in this Circuit routinely award percentage-of-recovery fees equal to the requested fee. *See In re Ferro Corp. ERISA Litig.*, No. 05-1594, 2007 U.S. Dist. LEXIS 71929, at *7 (N.D. Ohio Sept. 27, 2007) (awarding 1/3 of $4 million settlement fund); *Kogan v. AIMCO Fox Chase, L.P.,* 193 F.R.D. 496, 503 (E.D. Mich. 2000) (awarding attorneys' fees of one third of common fund of $4 million); *In re S. Ohio Corr. Facility*, 173 F.R.D. 205, 279 (S.D. Ohio 1997), *rev'd on other grounds*, 24 F. App'x 520 (6th Cir. 2001) (awarding 34% of $4.1 million fund); *Howes v. Atkins*, 668 F. Supp. 1021 (E.D. Ky. 1987) (40% of $1 million fund); *Adams v. Standard Knitting Mills, Inc.*, No. 8052, 1978 U.S. Dist. LEXIS 20317 (E.D. Tenn. Jan. 6, 1978) (35.8% awarded on fund of $3.4 million).

Moreover, the requested fee award is in line with percentages that have been awarded in other company stock drop, ERISA breach of fiduciary duty cases nationwide. *See e.g. In re Schering-Plough Corp. Enhance ERISA Litig.*, No. 08-1432 (D.N.J. May 31, 2012) (one-third of common fund) ; *Morrison v. Moneygram Intl., Inc.*, No. 08-1121 (D. Minn. May 20, 2011)  (one-

third) ; *Coppess v. Healthways, Inc.*, No. 10-109 (M.D. Tenn. Apr. 25, 2011)  (33.3%); *In re Radioshack Corp. "ERISA" Litig.*, No. 08-1875 (N.D. Tex. Feb. 8, 2011)  (33.3%); *Moore v. Comcast Corp.*, No. 08-773 (E.D. Pa. Jan. 24, 2011)  (awarding 33% fee); *In re Merck & Co. Vytorin ERISA Litig.*, No. No. 08-285, 2010 WL 547613, at *9-14 (D.N.J. Feb. 9, 2010) (awarding 33.3% fee); *In re Marsh ERISA Litig.*, No. 04-8157 (S.D.N.Y. Jan. 29, 2010) (one-third); *Graden v. Conexant Sys., Inc.*, No. 05-695 (D.N.J. Sept. 11, 2009) (33% fee); *Milliron v. T-Mobile USA, Inc.*, No. 08-4149, 2009 U.S. Dist. LEXIS 101201, at *24 (D.N.J. Sept. 10, 2009), *aff'd*, 423 F. App'x 131 (3d Cir. 2011) (awarding 33.3% fee); *In re Syncor ERISA Litig.*, No. 03-2446 (C.D. Cal. Mar. 30, 2009)  (33.3%)*; In re MBNA Corp. ERISA Litig.*, No. 05-429 (D. Del. Mar. 27, 2009) (33%); *In re Elec. Data Sys. Corp. ERISA Litig.*, No. 03-126 (E.D. Tex. Aug. 6, 2008) (33.3%); *Eslava v. Gulf Tel. Co.*, No. 04-297 (D. Ala. Nov. 16, 2007) (35%); *In re Aquila ERISA Litig.*, No. 04-865 (W.D. Mo. Nov. 29, 2007) (33%)

Finally, the requested fee award is entirely consistent with fees typically negotiated in the private marketplace between attorneys and their clients. *See Gaskill v. Gordon*, 160 F.3d 361, 362-63 (7th Cir. 1998) ("The typical contingent fee is between 33 and 40 percent," affirming fee award of 38% of common fund); *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986) (observing that "40% is the customary fee in tort litigation" and noting, with approval, contract providing for a one-third contingent fee if litigation settled prior to trial); *Hall v. AT&T Mobility LLC*, No. 07-5325, 2010 U.S. Dist. LEXIS 109355, at *71 (D.N.J. Oct. 13, 2010) (requested fee of 33.3% is "consistent with a privately negotiated contingent fee in the marketplace."); *In re Ikon Office Solutions, Inc. v. Stuart*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("[I]n private contingency fee cases, particularly in tort matters, plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery."); *Bradburn Parent Teacher Store, Inc. v. 3M*,

513 F. Supp. 2d 322, 340 (E.D. Pa. 2007) (approving requested fee award and holding that "a percentage of recovery of 35 percent is comparable to the likely 'percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained.'").

Under these factors, the fee request of 30% of the Settlement Fund is reasonable, particularly given the time devoted by Plaintiffs' Counsel and the results obtained relative to the risk and complexity of the case.

## VI.    A LODESTAR CROSS-CHECK JUSTIFIES THE FEE AWARD

Courts can cross-check the reasonableness of a fee award based on a percentage of the recovery by examining counsel's lodestar. *See Bowling*, 102 F.3d at 780 (affirming district court's use of lodestar to cross-check percentage of the fund award). "The application of the lodestar method is advantageous because it provides great accountability for the amount of work performed by class counsel. Furthermore, the 'lodestar' method may be used to account for the risk undertaken by class counsel in assuming the litigation, the quality of work performed, and the public benefit achieved." *Telectronics*, 137 F. Supp. 2d at 1041 (citation omitted). Regardless of whether the Court employs the percentage method or the lodestar method for determining fees, Co-Lead Counsel respectfully submit that the requested fees are reasonable and should be awarded in full.

As mentioned above, Plaintiffs' Counsel spent over 7,000 hours in the prosecution of this Action of behalf of Lead Plaintiffs and the Class. The number of hours expended by Plaintiffs' Counsel is reasonable in light of the length of the Action, the hard-fought nature of the litigation, and the complexity of the issues involved. Co-Lead Counsel sought throughout this litigation to avoid duplication of effort by counsel. Moreover, Plaintiffs' Counsel are not including for

purposes of this application, many time entries in the exercise of billing discretion. *Id.*[6] Here, the total lodestar of Plaintiffs' Counsel, derived by multiplying the hours worked by each firm's attorneys and support staff by their current hourly rate, equals $3,613,910.05. Notably, the requested fee amount, 30% of the total recovery, amounts to a fractional multiplier -- the requested fee is less than Plaintiffs' Counsel's ordinary billable amount for this contingent fee case. *Id.*

The hourly rates of Plaintiffs' Counsel that were used to generate the lodestar are reasonable and appropriate. Reasonable hourly rates are determined by reference to the prevailing market rates charged by attorneys of comparable skill and experience in the community. The Supreme Court and other courts have held that the hourly rate to be applied in calculating the lodestar is that which is normally charged in the community where the attorney practices. *See, e.g., Blum v. Stenson*, 465 U.S. at 886, 895 (1984); *In re Bankamerica Corp. Sec. Litig.*, 228 F. Supp. 2d 1061, 1065 (E.D. Mo. 2002) ("while the hourly rates ranging up to $695 are high for the Eastern District of Missouri, they are nonetheless within the range of reasonableness in the realm of nationwide securities class actions."), *aff'd*, 350 F. 3d 747 (8th Cir. 2003). The relevant legal community is the national market for complex class-action firms with the skill and resources to undertake litigation of this magnitude. In determining reasonableness of the hourly rates, the Court should also take into account the attorneys' legal reputation, experience and status. *See In re Cincinnati Gas*, 643 F. Supp at 151 (considered that petitioning firms were "experts in sophisticated corporate litigation, and merit their designations as 'national' law firms wherein partners and associates charge and receive national fee

---

[6]     Co-Lead Counsel anticipate that they will spend substantial additional time in connection with the Settlement Fairness Hearing before this Court and in connection with the administration of the Settlement.

28

schedule.") Plaintiffs' Counsel are among the most prominent, experienced and well-regarded class action litigators in the nation. A nationwide market is appropriate given that Defendants retained firms of national scope, including the Philadelphia office of Morgan, Lewis & Bockius LLP and the Ohio offices of Jones Day.

It is appropriate to calculate Plaintiffs' Counsel's lodestar at current billing rates, as the use of current rates offsets the delay between counsel's expenditure of time and a court's award of attorneys' fees. The Supreme Court has recognized that in cases such as this, where counsel's entitlement to attorney's fees must await the conclusion of the case several years after the services are rendered, courts typically offset the delay in payment by either basing the award on current, instead of historical, billing rates, or by adjusting historical fees to account for their present value (*i.e.*, by awarding prejudgment interest on the fee award). *See Missouri v. Jenkins*, 491 U.S. 274, 282-84 (1989).

In sum, the requested attorneys' fees are well within the range of what courts in this Circuit commonly award in complex class actions such as this one, and the requested 30% fee award is reasonable and fair under both the percentage and lodestar methodologies.

## VII. PLAINTIFFS' COUNSEL'S OUT-OF-POCKET EXPENSES SHOULD BE REIMBURSED

Co-Lead Counsel also request that the Court grant their motion for reimbursement of $525,000 in litigation expenses incurred by themselves and other Plaintiffs' Counsel in connection with the prosecution of this litigation. In total, Plaintiffs' Counsel have incurred expenses totaling approximately $435,916.32. It is appropriate for counsel to seek reimbursement of the expenses incurred in litigating a class-wide, contingent case. *In re Telectronics*, 137 F. Supp. 2d at 1036 ("Counsel contributed to the creation of the Settlement Fund, and accordingly, are entitled to receive a reimbursement of their out-of-pocket expenses in

the [requested] amount"); *Enter. Energy*, 137 F.R.D. at 250 (holding that plaintiffs' counsel was entitled to the full recovery of their expenses from the common fund). All costs requested are the type of expenses typically billed by attorneys to paying clients in the marketplace. *Northcross v. Bd. of Educ.*, 611 F.2d 624, 639 (6th Cir. 1979).

Here, Plaintiffs' Counsel incurred expenses include, among others:  (1) fees charged by testifying experts and consultants; (2) costs of computerized legal and factual research; (3) costs for court reporters, transcripts and videos; (4) costs for the mediation services provided in this case; (5) litigation fund contributions; (6) filing and witness fees; (7) travel costs; (8) costs associated with photocopies, reproduction, and printing of documents; (9) postage and notice costs; (10) telephone and facsimile charges; and (11) costs of messengers and express services. These expenses were reasonably incurred in light of the work performed, the legal and factual issues presented, the vigorous defense mounted by Defendants, and the significant results obtained.

The expenses for which Plaintiffs' Counsel seek reimbursement are the types of expenses routinely charged to hourly paying clients.  For example, a large portion of the litigation expenses for which reimbursement is sought were incurred in payment for work performed by Lead Plaintiffs testifying and consulting experts on damages issues, which were strongly contested.  Other significant expenses include costs related to the processing, uploading and hosting of hundreds of thousands of pages of documents and  online legal research services such as LexisNexis and Westlaw.  These legal research costs were necessary in light of the substantial motion practice that occurred in this litigation.

The Court-approved notice provided to potential Class members informed them that Co-Lead Counsel intended to apply for the reimbursement of litigation expenses of up to $525,000.

30

The amount of expenses sought, $435,916.32, is less than the amount stated in the Notice. Plaintiffs respectfully request that the Court approve the expense request.

## VIII.   THE PROPOSED CASE CONTRIBUTION AWARDS ARE REASONABLE

In the exercise of its discretion, the Court may award special compensation to class representatives to compensate them "for the services they provided and the risks they incurred during the course of the class action litigation." *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (citation omitted).  Plaintiffs request that Class Representatives Anita Johnson, Joseph Stengel, and Donald Snyder be awarded $5,000 and that named Plaintiff Ebrahim Shanehchian be awarded $1,000 for their time and efforts on behalf of the Class.  The request is in line with awards granted in similar company stock drop ERISA cases in this Circuit, and represents a fair and reasonable amount in light of the benefit that the Plaintiffs helped to achieve for the Class.  *See Hadix v. Johnson*, 322 F.3d 895, 897-98 (6th Cir. 2003); *Brotherton*, 141 F. Supp. 2d at 907 (awarding named plaintiff and class representative fee of $50,000).

The enforcement of ERISA by private litigants is expressly contemplated under the statute, is in the public interest and should be encouraged.  *See, e.g.*, 29 U.S.C. § 1132(a); *Thornton v. E. Tex. Motor Freight*, 497 F.2d 416, 420 (6th Cir. 1974).  "Numerous courts have recognized that named plaintiffs in class actions are entitled to individual awards as compensation for their time and effort in asserting the interests of the class, meeting discovery and other litigation responsibilities, and working with counsel to advance the interests of the class."  *Feerer v. Amoco Prod. Co.*, No. 95-0012, 1998 U.S. Dist. LEXIS 22248, at *45 (D.N.M. May 28, 1998) (citations omitted).[7]   It is also in line with case contribution awards granted in this Circuit and nationwide.[8]

---

[7]      *See also Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is

31

Several factors are cited often by courts in analyzing named plaintiffs' requests for awards in class actions, including: the personal risk (if any) incurred by the plaintiff in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (*e.g.*, factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim, and of course, the ultimate recovery. *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997); *accord Frank*, 228 F.R.D. at 187.

The Named Plaintiffs stepped forward and pursued the Class's interests by prosecuting their claims on behalf of the members of the Class and on behalf of the Plans, and by undertaking the responsibilities attendant with serving as named plaintiffs. Plaintiff Shanehchian brought the first filed action and remained dedicated to the prosecution of this matter for over 5 years. Each Plaintiff contributed to the litigation and benefited the Class by (1) sitting for depositions; (2) reviewing the pleadings; (3) staying informed of the case and making

---

necessary to induce an individual to participate in the suit."); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) ("Incentive awards are not uncommon in class action cases and are within the discretion of the court.") (quoting *Roberts*, 979 F. Supp. at 200).

[8]     *See, e.g., In re Ferro Corp., ERISA Litig.*, No. 05-1594, 2007 U.S. Dist. LEXIS 71929, at *8-9 (approving award of $10,000 to the class representative as fair and reasonable); *In re Polaroid ERISA Litig.*, No. 03-8335, 2007 U.S. Dist. LEXIS 51983, at *9 (S.D.N.Y. July 19, 2007) (awarding $10,000 each to three class representatives); *In re SPX Corp. ERISA Litig.*, No. 304-192, 2007 U.S. Dist. LEXIS 28072, at *11 (W.D.N.C. Apr. 13, 2007) (awarding $7,500 to the named plaintiff); *In re Visteon Corp. ERISA Litig.*, No. 05-71205, 2007 U.S. Dist. LEXIS 96023, at *9-10 (E.D. Mich. Mar. 9, 2007) (approving awards of $5,000 to each class representative); *In re Broadwing*, 252 F.R.D. at 382 (awarding a "modest" $5,000 to each of two class representatives); *In re HealthSouth Corp. ERISA Litig.*, No. 03-1700, 2006 U.S. Dist. LEXIS 50196, at *22-23 (N.D. Ala. June 28, 2006) (approving awards of $5,000 to each of three class representatives); *In re CMS Energy ERISA Litig.*, No. 02-72834, 2006 U.S. Dist. LEXIS 55836, at *11 (E.D. Mich. June 27, 2006) (approving awards to three class representatives in the amount of $15,000 each); *In re WorldCom, Inc. ERISA Litig.*, No. 02-4816, 2004 U.S. Dist. LEXIS 20671, at *41 (S.D.N.Y. Oct. 18, 2004) (approving awards of $5,000 to each of the three named plaintiffs), *vacated on other grounds*, 2004 U.S. Dist. LEXIS 22952 (S.D.N.Y. Nov. 15, 2004).

themselves available to discuss the case with Plaintiffs' Counsel; (4) providing Plaintiffs' Counsel with extensive information and materials regarding their Plan investments; (5) providing information and documents responsive to Defendants' discovery requests; and (6) reviewing and ultimately approving the Settlement. Their initiative, time and efforts were essential to the successful prosecution of the litigation.

To date, no class member has objected to the case contribution awards. Accordingly, Plaintiffs respectfully request that the proposed payment of the case contribution awards to the Named Plaintiffs should be approved.

## CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court approve the Settlement, certify the Class, and approve the Plan of Allocation. In addition, Co-Lead Counsel's requests for attorneys' fees of 30.0% of the Settlement Fund, reimbursement of expenses incurred in connection with the prosecution and settlement of this Action in the amount of $435,916.32 and for case contribution awards of $5,000 to Class Representatives Anita Johnson, Donald Snyder, and Joseph Stengel and $1,000 for named Plaintiff Ebrahim Shanehchian should be approved for the reasons stated herein.

Dated: February 28, 2013                    Respectfully submitted,


By:     /s/ Stephen E. Imm
        Stephen E. Imm
        **KATZ, GREENBERGER & NORTON**
        105 East 4th Street, 4th Floor
        Cincinnati, OH 45202
        Tel: 513-721-5151
        Fax: 513-621-9285
        sei@kgnlaw.com

Lori G. Feldman
Arvind B. Khurana
Paul Andrejkovics
**MILBERG LLP**
One Pennsylvania Plaza
New York, NY 10119
212-594-5300


Robert I. Harwood
Samuel K. Rosen
Daniella Quitt
**HARWOOD FEFFER LLP**
488 Madison Avenue
New York, NY 10022
212- 935-7400

*Co-Lead Counsel  for Lead Plaintiffs and the Certified  Class*

*Of Counsel*

Alfred G.Yates, Jr.
Gerald L. Rutledge
**LAW OFFICE OF ALFRED G. YATES JR., PC**
519 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA  15219
Telephone: (412) 391-5164