UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

EBRAHIM SHANECHIAN, ANITA
JOHNSON, DONALD SNYDER and
JOSEPH STENGEL, individually
and on behalf of all others
similarly situated,

        Plaintiffs,

  v.

MACY'S, INC., et al.,

        Defendants.

:
:
:
:
:
:
:
:
:
:
:
:

NO. 1:07-CV-828

**OPINION & ORDER**

The Court held a fairness hearing on May 1, 2013, at which the Court heard from counsel from each side of this litigation. For the following reasons, the Court approves the parties' proposed settlement, including the payment of the requested attorneys' fees and costs and GRANTS Plaintiffs' motion for settlement approval and allocation of settlement proceeds (doc. 219). This Opinion and Order amends, and supercedes in its entirety, the Court's Opinion and Order filed May 8, 2013 (doc. 228).

**I.  BACKGROUND**

**A. History of the Litigation**

On August 30, 2005, Defendant Macy's completed a merger with The May Department Stores, acquiring nearly 500 May stores. According to the Plaintiffs' complaint, after the

acquisition, Macy's "made a series of material misrepresentations and omissions regarding [Macy's] declining sales growth and its failures in converting the newly acquired May stores into Macy's brand stores...which caused Macy's common stock to trade at artificially inflated levels" (doc. 27). Plaintiffs filed this class action on October 3, 2007, asserting claims under Section 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. Plaintiffs claimed that Defendants were fiduciaries of certain ERISA plans and that they breached their fiduciary duties under ERISA by allowing the plans to invest in Macy's stock and by encouraging plan participants to invest in Macy's stock. Plaintiffs alleged that as a result of Defendants' ERISA violations, Plaintiffs and members of the proposed class suffered substantial losses of retirement savings and anticipated retirement income.

This case then proceeded to be one of the most vigorously contested cases to come before the Court, but on March 10, 2011, the Court certified Plaintiffs' proposed class, defining it as follows:

> All participants in or beneficiaries of the Macy's, Inc. Profit Sharing 401(k) Investment Plan and the May Department Stores Company Profit Sharing Plan at any time from February 27, 2005, through and including the present, whose accounts included investments in Macy's stock and were damaged thereby.

> The Class specifically excludes Defendants, members of the Defendants' immediate families, any officer, director, or partner of any Defendant, any entity in which a Defendant has a controlling interest, and the heirs, successors or assigns of the foregoing.

On April 21, 2011, the Court heard arguments on Defendants' motion for partial summary judgment and partial judgment on the pleadings, but stayed its decision on the motion pending the resolution of Defendants' appeal of the Court's class certification order. The Sixth Circuit declined Defendants' petition for permission to appeal the class certification order, and the Court held a settlement conference on September 7, 2011. On February 22, 2012, the Court granted Plaintiffs' motion to continue Defendants' motion for partial summary judgment, finding it proper to all the parties to complete discovery before deciding any motion for summary judgment. On July 26, 2012, Plaintiffs informed the Court that a tentative settlement had been reached, and on December 20, 2012, the Court issued an order in which the Court, among other things, certified the following class for settlement purposes:

> All individuals who were Participants in either the Macy's Plan or the May Plan at any time between February 27, 2005 and July 24, 2012 whose Plan account included an investment in the Macy's Company Stock Fund at any time during that period. The Class specifically excludes the

3

Individual Defendants, their Immediate Family, and all current officers and directors of Macy's.[1]

The Court also determined that the matter should proceed as a non-opt-out class action under Federal Rule of Civil Procedure 23(a) and (b)(1); approved the notice to be sent to class members; set a class settlement fairness hearing; and approved the selection of the settlement administrator.

Pursuant to that order, notice of the proposed settlement was sent to more than 200,000 potential class members; the long form of the notice and other settlement-related documents were hosted on a dedicated website; and a summary notice was published over the PR Newswire. The deadline to file objections was March 21, 2013, and as of the date of the May 1, 2013 hearing, no objections to the settlement were filed.

**B.  The Settlement Agreement**

The parties engaged in three formal settlement conferences, with the final conference ultimately resulting in the settlement proposal now before the Court. The parties executed the settlement agreement on November 14, 2012. The parties have agreed to settle this matter for $8,500,000, from which would be taken attorneys' fees, costs, and case contribution awards for the named plaintiffs. The net

---

[1] Capitalized terms not defined herein shall have the meanings set forth in the parties' settlement agreement.

4

settlement award would then be allocated to the class members' plan accounts according to a formula established by the settlement administrator. Specifically, Plaintiffs' counsel noted at the hearing that, after the deduction of fees and expenses, the settlement award will be paid to the plans' fiduciary, who will make available to the settlement administrator the class members' trading history. Looking at four specific dates that correspond with the alleged misrepresentations and using regression analyses, the settlement administrator will determine what, if any, damages each member suffered, based on when they bought what and what they owned as of and after the relevant dates. The plans' fiduciary will then allocate the money accordingly to each class member's individual plan account, and the class members can then do with it what they choose. For those class members who are no longer participants in the plans, their proceeds will be deposited into a specific account, and they can withdraw the money at their election.

At the fairness hearing, Plaintiffs' counsel represented that notices were sent to over 99.9% of the potential class; fifty-six requests were received for the long form; four letters were received and responded to; and two hundred ninety-four telephone calls were received and responded to by the settlement administrator, and Plaintiffs' counsel

fielded ten additional phone calls. Plaintiffs' counsel noted that all inquiries were addressed to the satisfaction of the class member making the inquiry, and no objections to the settlement were made.[2]

In addition, Plaintiffs' counsel noted that Defendants retained an independent fiduciary on behalf of the ERISA plans at issue here to review the settlement agreement to determine whether to approve it on behalf of the plans or whether the plans should object to the settlement. Based on his review of the relevant documents in this case, he believes that the proposed settlement is reasonable and fair to the plans and approved the agreement on behalf of the plans.

Having heard from both Class Counsel and Defense Counsel and having read the comprehensive filings in this matter, the Court has been adequately briefed on the fairness and reasonableness of the proposed settlement. The Court is therefore prepared to rule on the Lead Plaintiffs' Motion for: (1) Final Approval of Class Action Settlement and (2) Plan of Allocation of Settlement Proceeds and Lead Counsel's Motion for: (1) Award of Attorneys' Fees and Reimbursement of Expenses and (2) Case Contribution Awards (doc. 219).

---

[2] The Court notes that Defendants represented to the Court that all requirements of the Class Action Fairness Act have been met, including the mailing of CAFA notices to the state attorneys general (doc. 227).

## II. DISCUSSION

### A. The Class Action Settlement and Plan of Allocation

Rule 23(a) of the Federal Rules of Civil Procedure provides that:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The Court's task is to determine whether settlement of this class action pursuant to Rule 23 is appropriate at this time. The first issue before the Court is to decide whether the settlement is fair, reasonable, and adequate.

### 1. Legal Standard

According to Rule 23 of the Federal Rules of Civil Procedure, court approval is required to settle a class action. Fed. R. Civ. P. 23(e) ("A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such a manner as the court directs.").

The law generally favors the settlement of complex class actions. Enterprise Energy Corp. v. Columbia Gas

<u>Transmission Corp.</u>, 137 F.R.D. 240, 246 (S.D. Ohio 1991).  There are three steps that must be taken by the Court in order to approve a settlement: (1) the Court must preliminarily approve the proposed settlement; (2) members of the class must be given notice of the proposed settlement; and (3) after holding a hearing, the Court must give its final approval of the settlement. <u>Williams v. Vukovich</u>, 720 F.2d 909, 921 (6th Cir. 1983); <u>Enterprise Energy Corp.</u>, 137 F.R.D. at 245; <u>In re Dun & Bradstreet Credit Services Customer Litigation</u>, 130 F.R.D. 366, 369 (S.D. Ohio 1990).

Although Rule 23(e) is silent as to the standard courts should apply to approve or disapprove a proposed settlement, the standard developed by the courts is to determine whether the proposed settlement is fair, adequate, and reasonable under the circumstances, and whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued. <u>Bailey v. Great Lakes Canning, Inc.</u>, 908 F.2d 38, 42 (6th Cir. 1990)(a district court may give its final approval of a class action settlement if it determines that the settlement is "fair, adequate, and reasonable, as well as consistent with the public interest."). This is determined by examining the settlement "in its entirety and not as isolated components." <u>Enterprise Energy Corp.</u>, 137 F.R.D. at 245.

The Court is not "to determine the merits of the controversy or the factual underpinning of the legal authorities advanced by the parties." Vukovich, 720 F.2d at 921. Instead, when determining whether the proposed settlement is fair, adequate, and reasonable, the Court takes into account several factors:

> (1) the plaintiffs' likelihood of ultimate success on the merits balanced against the amount and form of relief offered in settlement;
>
> (2) the complexity, expense and likely duration of the litigation;
>
> (3) the stage of the proceedings and the amount of discovery completed;
>
> (4) the judgment of experienced trial counsel;
>
> (5) the nature of the negotiations;
>
> (6) the objections raised by the class members; and,
>
> (7) the public interest.

In re Dun, 130 F.R.D. at 371 (citing Vukovich, 720 F.2d at 922); Enterprise Energy Corp., 137 F.R.D. at 245.

With these rules in mind, the Court now turns to an examination of the proposed settlement. The Court has previously made a preliminary approval of the settlement (doc. 218). In addition, the Court finds that the notice sent to the class regarding settlement of this matter was reasonable and that the settlement administrator was extraordinarily successful

in ensuring that the notice reached members of the class. Therefore, the Court will now proceed with an analysis of the factors involved in a determination of whether this proposed settlement is proper.

**2.  Plaintiffs' Likelihood of Ultimate Success on the Merits Balanced Against the Amount of Settlement**

It is important to note that Defendants have steadfastly denied any liability in this case.  Plaintiffs did succeed in defeating the bulk of Defendants' motion to dismiss, and the Court did certify the class.  However, Class Counsel acknowledged at the hearing that the developing law in the Sixth Circuit negatively impacted their chances for obtaining a high verdict in this case.  Indeed, at the hearing, Defendants reiterated their contention that the developing law in the Circuit would mean that no damages would be appropriate in this case, and they believe that rightly influenced Plaintiffs' decision to settle.  In addition, Defendants noted that cases like this one rarely go to trial, and the only trial verdicts with publicly traded companies have been for the defendants.  In short, as noted by the independent fiduciary retained by the plans, there are significant factual and legal obstacles remaining in Plaintiffs' path, both as to whether Defendants actually have liability here and, if so, whether any amount of damages would be appropriate.  Balancing Plaintiffs' likelihood

10

of success on the merits and the amount of a potential award against the amount of the settlement clearly weighs in favor of this settlement.

**3. The complexity, expense and likely duration of the litigation, the stage of the proceedings, and the amount of discovery completed all militate in favor of settlement.**

Class counsel indicated at the hearing that they believe that this litigation would likely continue for another five to six years if settlement were not consummated. Both sides repeatedly acknowledged that this was a hard-fought case and that it would continue to be vigorously defended and tenaciously prosecuted, which necessarily means that the transactional costs, already substantial, would only continue to grow in the event litigation were to continue.

Both sides have engaged in significant formal and informal discovery, including extensive document review and depositions and consultations with economic experts. Both sides have represented to the Court that they have a full understanding of the strengths and weaknesses of their respective positions, and, given that full understanding, both sides desire to settle this matter.

This case is six years old already. Given that dispositive motions would still need to be addressed, that trial could result, that preparation for trial would be lengthy and expensive, and that an appeal would be all but inevitable, it

11

could be another six years and millions of dollars before this case would be put to rest.  To delay the resolution of this case would not benefit the class.  In addition, given the amount of discovery both sides have engaged in, they come to the proposed settlement after having fully evaluated the strength of their positions.  These factors weigh in favor of the proposed settlement.

      **4.    Experienced Trial Counsel and the Nature of the Negotiations Support Settlement**

      The class members are represented by counsel with extensive litigation experience, including significant experience in the prosecution of complex class actions, including ERISA actions.  Indeed, both Milberg and Harwood Feffer are leading law firms in pursuing ERISA litigation.  The Court notes that Class Counsel's endorsement of the proposed settlement is informed both by the attorneys' vast experience in these types of cases and by the amount of discovery completed in this case.

      The Court further notes that this settlement was reached through significant and substantial arms-length negotiations, with absolutely no hint or suggestion of collusion or illegality.  The Court itself conducted one of the three formal settlement conferences, and the other two were conducted by independent mediators jointly chosen by the parties.

The recommendation of highly-regarded and highly-experienced Class Counsel and the arms-length nature of the settlement negotiations support the Court's determination that the proposed settlement is fair, adequate and reasonable.

**5. No Objections Were Raised by the Class Members, and the Settlement is in the Public Interest**

Class Members were given a deadline of March 21, 2013 to file objections to the proposed settlement, and no objections were filed. In addition, the Court opened the floor at the fairness hearing to any objectors, and none was present. More than 200,000 notices were successfully sent, and a total of 318 contacts from class members who had questions or comments were fielded by either Class Counsel or the settlement administrator, each to the satisfaction of the class member.

It is notable that no objections were lodged with a class this large, with such effective and comprehensive notice provided, and this strongly supports the adoption of the proposed settlement. In addition, the public will be better served by the settlement of this case rather than having the case continue for another six years. Not only will settlement free up the Court's resources, but it will also provide a substantial benefit to the class members without further delay.

**B. The Award of Attorneys' Fees and Reimbursement of Expenses**

Plaintiffs' counsel took this case on a contingent basis and thus have been prosecuting this case for over five years without compensation. They now seek an award of attorneys' fees in the amount of 30% of the settlement fund ($2,550,000), plus the reimbursement of expenses incurred in the prosecution of this case ($435,916.32). Plaintiffs' attorneys and their support staff spent over 7,000 hours litigating this case, and the lodestar totals approximately $3,600,000. The request before the Court, then, is less than seventy percent of the time Class Counsel has spent in the case and equates to an approximate average of $345 per hour.

"It is within the district court's discretion to determine the appropriate method for calculating attorneys' fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." Bowling v. Pfizer, Inc., 102 F.3d 777, 779 (6th Cir. 1996). Moreover, an award of attorneys' fees in common fund cases need only be "reasonable under the circumstances." Rawlings v. Prudential–Bache Props., Inc., 9 F.3d 513, 516 (6th Cir. 1993).

Courts typically employ one of two methods in analyzing a request for attorneys' fees—the lodestar analysis or the percentage of the fund analysis. Id. To determine the

14

"lodestar" figure, the Court multiplies the proven number of hours reasonably expended on the litigation by a reasonable hourly rate. Reed v. Rhodes, 179 F.3d 453, 471 (6th Cir. 1999). The Court may then adjust the lodestar figure up or down based on a number of factors designed to account for case-specific circumstances. Id. at 471-72.

Under the percentage of the fund method, the court simply determines a percentage of the settlement to award the class counsel, based on several case-specific factors. Rawlings, 9 F.3d at 516. Sometimes courts employ both methods, using each as a "cross-check" against on the other. See, e.g., In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig., 268 F.Supp.2d 907, 923 (N.D. Ohio 2003).  Here, based on the record before the Court, a lodestar approach would yield fees in excess of those requested. The Court will therefore analyze the fees under the percentage of the fund method alone.

The Sixth Circuit established the relevant factors for determining a reasonable fee award in Ramey v. Cincinnati Enquirer, Inc., 508 F.2d 1188, 1196 (6th Cir. 1974). The Ramey factors include: "1) the value of the benefit rendered ... 2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others, 3) whether the services were undertaken on a contingent fee basis, 4) the value of the services on an hourly basis [the lodestar cross-check],

15

5) the complexity of the litigation, and 6) the professional skill and standing of counsel involved on both sides." 508 F.2d at 1196. There is no formula for weighing these factors. Rather, this Court must be mindful of the facts and circumstances of this specific case. Rawlings, 9 F.3d at 516.

Applying these factors to this case, the Court finds that Class Counsel's request is reasonable under the circumstances. The settlement provides immediate cash benefit[3] to the class members and cuts off what would otherwise be protracted litigation with significant obstacles to success and a real likelihood of a smaller ultimate recovery or even no recovery at all. As noted above, Class Counsel took this case on a contingent fee basis and thus assumed a huge financial risk. This is a complex case that has been fiercely prosecuted and defended, and Class Counsel are highly skilled, as are Defendants' counsel.

The Raney factors weigh in favor of approving Class Counsel's request for attorneys' fees and reimbursement of expenses.

**C. Case Contribution Awards for the Named Plaintiffs are Reasonable**

---

[3] Recognizing that the money will go into plan participants' individual accounts and will not be a typical cash payment, it is the functional equivalent of cash, and there will not be a protracted payout.

"Courts within the Sixth Circuit ... recognize that, in common fund cases and where the settlement agreement provides for incentive award, class representatives who have had extensive involvement in a class action litigation deserve compensation above and beyond amounts to which they are entitled to by virtue of class membership alone." Lonardo v. Travelers Indem. Co., 706 F.Supp.2d 766, 787 (N.D. Ohio 2010). Class Counsel here ask the Court to award $5,000 to each of the class representatives and $1,000 to Plaintiff Shanehchian for their contributions to the prosecution and settlement of this case, such awards to be paid out of the settlement amount.[4] As support for this request, Class Counsel note that the class representatives and Mr. Shanehchian contributed considerable time to the prosecution of this case by reviewing the complaint; staying informed of the progress of the case and being available at all times to discuss the case; providing information and document in response to Defendants' discovery requests; participating in teleconferences; reviewing, considering and approving the proposed settlement agreement; and, with respect to the class representatives, appearing for depositions.

---

[4] The class representatives were designated by the Court in its Opinion and Order of March 10, 2011, and are Anita Johnson, Donald Snyder, and Joseph Stengel (doc. 164).

The Court finds Class Counsel's request on behalf of the class representatives and Plaintiff Shanehchian to be reasonable.

### III.    CONCLUSION

The Court has thoroughly reviewed all aspects of the proposed settlement agreement and the motion for attorneys' fees.  Under the circumstances of this case, the Court finds that the proposed settlement is fair, reasonable and adequate. Further, the Court finds that Class Counsel's request for attorneys' fees and reimbursement of expenses is reasonable under the circumstances and that a case contribution award to the class representatives and to Plaintiff Shanechian is appropriate.

Accordingly, for the reasons set forth herein, the Court GRANTS Lead Plaintiffs' Motion for: (1) Final Approval of Class Action Settlement and (2) Plan of Allocation of Settlement Proceeds and Lead Counsel's Motion for: (1) Award of Attorneys' Fees and Reimbursement of Expenses and (2) Case Contribution Awards (doc. 219); APPROVES the parties' settlement of this case as fair, adequate, and reasonable; AWARDS Plaintiffs' attorneys fees in the amount of 30% of the settlement fund and reimbursement of expenses in the amount of $435,916.32;  and AWARDS case contribution payments of $5,000 to class

representatives Anita Johnson, Donald Snyder, and Joseph Stengel and of $1,000 to named Plaintiff Ebrahim Shanehchian.

The Court further ORDERS that, upon the Effective Date of the Settlement, the Class Representatives, the Plans, and the Class Members, on behalf of themselves and their Representatives, heirs, executors, administrators, trustees, Predecessors, Successors-In-Interest, and assigns (in their capacities as such), release and forever discharge and are forever enjoined from prosecuting any Settled Claim against any of the Released Parties and covenant not to sue any of the Released Parties with respect to any of the Settled Claims; provided, however, that no Released Party shall seek any remedy for assertion of Settled Claims by any Class Member other than the Class Representatives until at least thirty (30) days after providing such Class Member with written notice of his or her release of, and the injunction against asserting, Settled Claims and demanding such Class Member to desist from any conduct in violation thereof.

The Court ORDERS that, upon the Effective Date of the Settlement, Defendants, on behalf of themselves, the other Released Parties and their Representatives, heirs, executors, administrators, trustees, Predecessors, Successors-In-Interest, and assigns (in their capacities as such) release and forever discharge and are forever enjoined from prosecuting the Settled

19

Defendants' Claims against the Class Representatives, all members of the Class, and Plaintiffs' Counsel.

Finally, the Court ORDERS that all claims that were asserted in the Action are hereby DISMISSED WITH PREJUDICE, without further order of the Court, pursuant to the terms of the parties' settlement agreement, which is incorporated herein by reference and made part of this Order.  The Court retains jurisdiction over all matters arising out of or related to the Settlement.

SO ORDERED.

Dated:  July 25, 2013        s/S. Arthur Spiegel_____
                             S. Arthur Spiegel
                             United States Senior District Judge